

|  |  |
|---|---|
| **BY CM/ECF** | Fish & Richardson P.C.<br>222 Delaware Avenue<br>17th Floor<br>P.O. Box 1114<br>Wilmington, DE 19899-1114 |
| April 22, 2020 | 302 652 5070 main<br>302 652 0607 fax |
|  | **Douglas E. McCann**<br>Principal<br>DMcCann@fr.com<br>302 778 8437  direct |

The Honorable Colm F. Connolly
United States District Court
For the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

Re: Magnolia's proposed structure for "diverter" (U.S. patent 9,855,001);
*Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, C.A. No. 19-00097-CFC-CJB

Dear Judge Connolly,

Magnolia proposes the following structure for "diverter" under a mean-plus function construction:[1]

- **Function** (agreed): to direct fluid flow to one fluid flow path or to a second fluid flow path.

- **Corresponding Structure**: The structures already recited in the claim (i.e., inlet, first outlet, and [claim 1: second outlet; claim 21: reservoir]) and either: (i) a switchable valve, or (ii) flow control blocks.

Magnolia's construction includes structure sufficient for performing the recited function, according to the two disclosed embodiments in Figures 6 and 7, without including unnecessary structure. *See Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) ("Nor does [§112, ¶ 6] permit incorporation of structure from the written description ***beyond that necessary*** to perform the claimed function.").[2]

---

[1] Magnolia reserves the right to appeal the Court's claim construction of "diverter."

[2] Emphasis is added.

fr.com



The Honorable Colm F. Connolly
**April 22, 2020**
Page 2

Taking Claim 1 and the Figure 6 embodiment as an example, the "switchable valve" is the only piece of structure "missing" from the claim. Once included, the claim includes all necessary structures to perform the agreed-upon function:

> a **diverter** having an **inlet**, a **first outlet** in fluid communication with the reservoir, and a **second outlet** . . . , the diverter operable in a ***first operating mode*** in which an initial volume of bodily fluid can flow from the inlet to the first outlet, and a ***second operating mode*** in which: a) a subsequent volume of bodily fluid can flow from the inlet to the second outlet…,
>
> the **diverter** configured ***to transition*** from the ***first operating mode*** to the ***second operating mode***…

'001 patent Claim 1. The specification states, "[w]hen the ***switchable valve*** 602 is in a ***first position*** … the blood flows into the pre-sample reservoir[.]" *Id.* at 7:57-63. "FIG. 6B illustrates … [w]hen the ***switchable valve*** 602 is in a ***second position***, … the ***switchable valve*** 602 creates a seal disallowing the flow of blood … into the pre-sample reservoir … Consequently the blood flows into the one or more sample vessels[.]" *Id.* at 7:65-8:6.

In the Figure 7 embodiment, it is "flow control blocks" (702 and 704) instead of the "switchable valve" that—together with the structural elements recited in the claim—facilitate the claimed function. *See id.* at 8:50-63 ("When the input flow-control block 702 and the output flow-control block 704 are in a first position … the flow of blood … passes through … the pre-sample reservoir … once a desired amount of blood is diverted to the one or more pre-sample reservoirs, the flow control blocks can be slid to a second positon to divert blood flow to the second needle[.]").

In Claim 21, the recited structural elements are an inlet, an outlet, and a reservoir (akin to the first outlet in claim 1). *Id.* at Claim 21 ("the diverter including an inlet, an outlet, and a reservoir…the diverter configured to divert the flow of bodily fluid to the second fluid flow path"). As with Claim 1, only a switchable valve or flow-

Case 1:19-cv-00097-CFC-CJB Document 71 Filed 04/22/20 Page 3 of 5 PageID #: 2501



The Honorable Colm F. Connolly
**April 22, 2020**
Page 3

control blocks is additionally needed to perform the agreed-upon function. *See id*. at 7:65-8:4; 8:5-6; 8:50-63.

Magnolia's proposal aligns with Kurin's argument – i.e., the key piece of "missing" structure is the "switchable valve" or "flow control blocks." *See* Joint Br. at 47 ("The specification then describes two possible structures that can perform this function of controlling fluid flow: (i) a switchable valve, or (ii) flow control blocks."); *see also* Ex. A (Kurin slides 27-30);[3] Ex. B, Transcript at 10:19-12:4 (discussing slide 27).

Kurin nonetheless proposes "Figs. 6A, 6B, 7A, and 7B, and the text of the '001 patent that describes those figures (7:49-9:15)" as the corresponding structure. Ex. C. Kurin's proposal is wrong. In looking to the specification for corresponding structure, the Court should only include structures *necessary* to perform the claimed function. *Micro Chem., Inc.*, 194 F.3d at 1258.

Kurin's citation to 7:49-9:15 of the specification includes, among other things, "a plurality of pre-sample reservoirs" (8:10-11), "an external switch" (8:19), "sensors" (8:25), "timers" (8:26), and descriptions of how the structures operate (7:55-8:16 and 8:50-9:15). Neither those structures (nor their descriptions) are necessary.

Kurin's proposal is also unworkable. The Court's claim constructions "become the basis of the jury instructions, should the case go to trial." *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001). Magnolia's proposal will aid the jury. Kurin's will not.

Respectfully submitted,

*/s/ Douglas E. McCann*

Douglas E. McCann

---

[3]Kurin's slides refer to the "switchable valve" as a "flapper valve," a term not in the patent.



The Honorable Colm F. Connolly
**April 22, 2020**
Page 4


cc: All counsel of record – (via electronic email)

## CERTIFICATION BY COUNSEL

I hereby certify that **PLAINTIFF'S LETTER REGARDING PROPOSED STRUCTURE FOR "DIVERTER"** complies with the typeface and word count limitations in the Court's Standing Order Regarding Briefing In All Cases (Nov. 6, 2019) as modified by the Court at the April 15, 2020 claim construction hearing (18: 19-22).  The total number of words, including footnotes, following the salutation and prior to the closing, is 747, according to the word processing system used to create the letter.  The text of the letter is 14-point, Times New Roman.

By: */s/ Douglas E. McCann*
    Douglas E. McCann