**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KURIN, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No.: 19-cv-00097-CFC-CJB <br> ) <br> ) ▮▮▮▮▮▮▮▮▮▮ <br> ) <br> ) <br> ) <br> ) |

**KURIN, INC.'S LETTER BRIEF TO THE HONORABLE
<u>CHRISTOPHER J. BURKE REGARDING DISCOVERY DISPUTE (D.I. 113)</u>**

Kenneth L. Dorsney (#3726)
*kdorsney@morrisjames.com*
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE  19801
(302) 888-6800

*Attorneys for Defendant-Counterclaim-
Plaintiff Kurin, Inc.*

Karen I. Boyd *(pro hac vice)*
*boyd@turnerboyd.com*
Louis L. Wai *(pro hac vice)*
*wai@turnerboyd.com*
Jacob S. Zweig *(pro hac vice)*
*zweig@turnerboyd.com*
Cyndi J. Claxton *(pro hac vice)*
*claxton@turnerboyd.com*
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, California 94063
(650) 521-5930

Jonathan Hangartner *(pro hac vice)*
*jon@x-patents.com*
X-Patents, APC
5670 La Jolla Blvd.
La Jolla, CA  92037
(858) 454-4313

*Attorneys for Defendant-Counterclaim-
Plaintiff Kurin, Inc.*

Dated:  August 20, 2020

Dear Judge Burke:

Defendant Kurin, Inc. ("Kurin") respectfully requests that Plaintiff Magnolia Medical Technologies, Inc.'s ("Magnolia") be ordered to search and produce the electronic documents of Magnolia's now-former V.P. of Marketing Brad Nelson.[1]  Five months after originally requested by Kurin, Magnolia last week agreed to produce custodial documents for Ward Sparacio, who was Magnolia's V.P. of Sales & Marketing from May 2013 to June 2017.  Exs. I, F, and H, at 1. Mr. Nelson (the subject of this motion) was Magnolia's next V.P. of Marketing from September 2017 to April 2020.  Ex. J.  Mr. Nelson describes his job at Magnolia as:

- Management of all marketing activities including branding, digital marketing, PR and events delivering annual lead increases of over 100% each year.
- Guided all product management and portfolio strategy including customer needs assessment, business case analysis and feature prioritization.
- Strategic and tactical development of messaging and highly differentiated brand assets targeting a diverse audience in a matrix selling process.

Ex. J.  Mr. Nelson's marketing- related documents are relevant at least to objective indicia of non-obviousness, lost profits, and reasonable royalty.

Before Magnolia searched or produced any custodial documents, Kurin identified Mr. Nelson as a potentially relevant custodian and encouraged Magnolia to determine whether Mr. Nelson may have had more discoverable information than certain other custodians identified in Magnolia's Initial Disclosures.  Magnolia refused to cooperate with Kurin's request.

Kurin's review of Magnolia's eventual document production has borne out Kurin's concerns: Magnolia produced far fewer documents from custodians Shan Gaw and Jay Miazga, who are apparently non-employee, secondary inventors on the patents-in-suit, than from Magnolia's other five document custodians.  Mr. Nelson's position, and the fact that his name appears in the to/from/cc/bcc field of many emails produced from other custodians, indicates that Mr. Nelson's custodial documents are likely to have discoverable information.  Thus, Kurin seeks an order compelling Magnolia to produce Mr. Nelson's custodial documents.

## I.   Background

The Scheduling Order requires that the parties conduct searches of email and other ESI maintained by certain document custodians identified by the parties.  D.I. 24, Exhibit B at ¶ 3.c.

---

[1] Kurin had originally sought this discovery telephone conference also regarding Magnolia's failure to provide its witnesses for deposition.  With the exception of inventor and Magnolia founder Richard Patton, Magnolia has now scheduled its depositions.  The parties are working together with regard to scheduling Dr. Patton's deposition.  Magnolia has yet to confirm dates during the discovery period, despite Kurin's identifying multiple possible dates that fit in with the other scheduled depositions.  As Magnolia has not taken a final position that it refuses to produce Dr. Patton before the discovery cut-off, Kurin does not believe that this issue is ripe for the Court's intervention.

Based on its knowledge of its own company, each party was to identify the "7 custodians (absent a showing of good cause for additional custodians) most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely." *Id.* at ¶ 2.a. The Scheduling Order requires that the parties "reach agreements cooperatively on how to conduct discovery," *id.* at ¶ 1.a, and "use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information[,] … including limits on custodians," at ¶ 1.b.

Magnolia's first Initial Disclosures, served on June 24, 2019, identified six custodians: Gregory J. Bullington, Richard G. Patton, Shan E. Gaw, Jay M. "Mizaga" [sic: Miazga], Bob Gerberich, and Matthew Stuckert. Ex. A, at 3-4. Kurin's Initial Disclosures identified certain other Magnolia personnel as likely to have discoverable information, including Mr. Nelson, Mr. Sparacio, and Tammy Johnson. Ex. B, at 5.

On August 27, 2019, Kurin sent Magnolia its initial ESI search terms and requested that Magnolia run test searches. Ex. C. Magnolia ignored Kurin for five months. On January 15, 2020, Kurin again reached out to Magnolia about starting document collection. Ex. D. Finally, on January 23, 2020, Magnolia indicated that it was ready to move forward. Ex. E, at 1-2.

On February 26, 2020, Kurin raised a concern about Magnolia's identified document custodians. Based on their roles, Kurin questioned whether three current and former Magnolia personnel (Tamara Johnson (Sr. Dir. of National Clinical Operations), Ward Sparacio (past V.P. of Sales and Marketing), and Brad Nelson (then current V.P. of Marketing) might have more discoverable information than other witnesses identified by Magnolia eight months earlier. Ex. F, at 3. Kurin suggested that Magnolia perform test searches on all nine potential Magnolia custodians to identify the top seven. *Id.* Magnolia refused, insisting that Kurin identify the seven Magnolia custodians for whom Kurin would like its searches performed, and refusing to explain how it had identified its custodians. *Id.* at 1-2. Kurin warned Magnolia that "if Magnolia is not willing to perform test searches on all 9 custodians, Kurin is more likely to need to seek leave of court under the ESI order for additional custodians." *Id.* at 1. Forced to make an educated guess, Kurin chose Tamara Johnson as Magnolia's seventh custodian. *Id.*

Kurin's review of Magnolia's production confirms that Ward Sparacio and Brad Nelson are, in fact, among the Magnolia custodians with the most discoverable information. Mr. Sparacio's name appears in the to/from/cc/bcc field of 5,328 Magnolia-produced emails; Mr. Nelson's name appears in to/from/cc/bcc field of 3,233 Magnolia-produced emails. Magnolia produced only 337 documents and 284 documents, respectively, for apparent non-employee, secondary inventors Shan Gaw and Jay Miazga—far fewer than the 5,385 to 38,006 documents it produced for its other five custodians. Thus, it appears that Mr. Gaw and Mr. Miazga are not among the seven custodians most likely to have discoverable information. By contrast, Mr. Sparacio and Mr. Nelson should have been included as document custodians, based on their roles and on the number of other custodians' documents in which their names appear. Kurin brought this to Magnolia's attention in a letter dated July 28, 2020. Ex. G. Magnolia agreed to search and produce Mr. Sparacio's custodial data, but not Mr. Nelson's. Ex. H, at 1.

## II.   Good cause exists to compel production of Mr. Nelson's documents

In cases in which this Court has assessed whether good cause exists under a Scheduling Order to compel the inclusion of an additional document custodian, this Court has considered "the good cause standard under Rule 16(b)[, which] hinges on the diligence of the movant, and not on prejudice to the non-moving party." *Re XPRT Ventures, LLC v. eBay, Inc.*, No. 1:10-CV-00595-SLR, 2011 WL 13142141, at *6 (D. Del. June 15, 2011) (quoting *Frederick v. Avantix Labs., Inc.*, 773 F. Supp. 2d 446, 449–50 (D. Del. 2011)).  This assessment must be consistent with "[a] liberal interpretation of the discovery rules [that] will afford the parties 'opportunities to obtain the fullest possible knowledge of the issues and facts prior to trial.'"  *Id.* at *7 (citing *Hicks v. Feeney*, 124 F. R. D. 79, 82 (D. Del. 1987)).

Kurin has been diligent.  Kurin brought this issue to Magnolia's attention early in Magnolia's document collection process.  Had Magnolia agreed to Kurin's reasonable proposal to properly identify the most appropriate custodians prior to document production, there would be no need to add additional custodians at this time.

Mr. Nelson's documents are likely to include relevant, responsive information with regard to lost profits, reasonable royalty, and objective indicia of non-obviousness.  *See Re XPRT Ventures*, 2011 WL 13142141, at *4 (D. Del. June 15, 2011) ("For purposes of discovery, relevancy is broadly construed.").  Magnolia's V.P. of Marketing is likely to possess relevant information going to demand for Magnolia's patented products and Magnolia's marketing capability to exploit that demand, and as to commercial success and the advantages of the patented products.  Mr. Nelson's documents are not likely to be cumulative with those already produced.  Mr. Nelson's job title is different from those of Magnolia's other custodians, and he appears to be the continuing head of marketing after Mr. Sparacio left Magnolia in 2017.  The accused Kurin Lock product came on the market in 2017, so Mr. Nelson's documents are likely to be more relevant than Mr. Sparacio's when it comes to Magnolia's marketing efforts focused on Kurin.  This Court has found that production from additional custodians is likely non-duplicative and warranted in such circumstances.  *See Ethicon LLC et al v. Intuitive Surgical, Inc., et al.*, No. 1-17-cv-00871, Oral Order (D. Del. Oct. 30, 2018).

Magnolia would suffer no undue burden.  Magnolia has, in fact, already agreed to search and produce documents for Mr. Sparacio, and has offered no justification for not doing the same for its next V.P. of Marketing, Mr. Nelson.  Any inconvenience is a problem of Magnolia's own making, because Magnolia refused to engage with Kurin's "reasonable, good faith" effort to identify the proper custodians prior to document production.  *See* D.I. 24, Exhibit B at ¶ 1.b.

## III.   Conclusion

Because Kurin has demonstrated good cause for Magnolia to search and produce Mr. Nelson's documents, Kurin respectfully requests that the Court compel Magnolia to do so by September 4, 2020 so that Kurin can use the documents to prepare for its 30(b)(6) deposition of Magnolia (including damages and other marketing-related topics), which is scheduled for September 9-10.

Respectfully submitted,

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney (#3726)


cc: All counsel of record (via CM/ECF and electronic mail)

# EXHIBIT   A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> KURIN, INC., <br><br> Defendant. | Civil Action No.: 1:19-cv-00097-CFC <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF MAGNOLIA MEDICAL**
**TECHNOLOGIES, INC.'S INITIAL DISCLOSURES**

Pursuant to Federal Rule of Civil Procedure 26(a) and the Court's Scheduling Order, Plaintiff Magnolia Medical Technologies, Inc. ("Magnolia") hereby makes the following initial disclosures to Defendant Kurin, Inc. ("Defendant").

Magnolia has not yet completed its investigation relating to this action and provides its initial disclosures based on the information reasonably available to it at this time. These disclosures represent a good-faith effort to identify information that Magnolia reasonably believes may be used to support one or more of its claims or defenses. Magnolia's investigation and analysis are ongoing, and discovery from the parties and/or third parties may yield additional information. Magnolia further notes that it has not yet received from Defendant an identification of the prior art or specific grounds supporting Defendant's allegations of invalidity or noninfringement. Magnolia therefore reserves the right to supplement, revise, correct, clarify, or otherwise amend these initial disclosures, consistent with the Federal Rules of Civil Procedure, the Local Rules for the District of Delaware, and any applicable orders of the Court.

By making these disclosures, Magnolia does not represent that it is identifying every document, tangible thing, or witness possibly relevant to this lawsuit. Nor does Magnolia represent that every individual or entity identified herein necessarily possesses any relevant information.

Magnolia reserves the right to call any witness, including the right to identify expert witnesses, or present any exhibit or item at trial not listed herein but determined through discovery, investigation, or otherwise to support its claims or defenses.

By making these disclosures, Magnolia does not waive any applicable privilege or protection, including without limitation, the attorney-client privilege, attorney work product protection, the joint defense privilege, and the common interest privilege. Magnolia's initial disclosures are also made without waiving in any way: (a) the right to object to any discovery requests or to the admissibility of any evidence on the grounds of privilege, work product immunity, relevance, competency, materiality, hearsay, or any other proper ground in this action or any other action; (b) the right to object to the use of any such information, for any purpose, in whole or in part, in any proceeding in this action or in any other action; or (c) the right to object on any and all grounds to any other discovery request or proceeding involving or relating to the subject matter of these disclosures in any proceeding in this action or in any other action.

Subject to these reservations, Magnolia discloses the following information:

**(a)** **Individuals Likely to Have Discoverable Information that Magnolia May Use to Support Its Claims or Defenses – Rule 26(a)(1)(A)(i)**

Subject to and without waiving the limitations set forth above, Magnolia is presently aware of the following individuals, including Magnolia employees or former employees, who are likely to have potentially discoverable information that Magnolia may use to support its

claims or defenses. All persons listed below whose contact information states "may be contacted through counsel for Magnolia" may be contacted only through Fish & Richardson. These people, including any other Magnolia employees, may not be contacted directly and should only be contacted through Fish & Richardson. In making these disclosures, Magnolia does not waive its right to object to discovery of information from any of these individuals or any other individuals, including by deposition or otherwise.

Magnolia may modify or supplement this list of knowledgeable individuals and entities under Federal Rule of Civil Procedure 26(e) as Defendant's claims and defenses are clarified and investigation and discovery develop. Pursuant to this Court's Scheduling Order, Magnolia states that, based on the information presently available to Magnolia and its investigation to date, it believes that the following custodians are most likely to have discoverable information in their possession, custody, or control, from the most likely to the least likely.

| Name | Contact Information | Title and Connection to the Case | Subject Matter |
|------|---------------------|----------------------------------|----------------|
| Gregory J. Bullington | May be contacted through counsel for Magnolia | Magnolia CEO and Co-Founder; named inventor of the '483 and '139 patents | Mr. Bullington is a named inventor on U.S. Patent Nos. 10,039,483 and 10,220,139 and may have information about those patents, including the conception and reduction to practice.<br><br>Mr. Bullington may have knowledge regarding Magnolia's products, sales and marketing, and Magnolia's corporate matters and financials. |
| Richard G. Patton, MD | May be contacted through counsel for Magnolia | Magnolia Co-Founder and Medical Director; | Dr. Patton is a named inventor on U.S. Patent Nos. 9,855,001, 10,028,689, 10,039,483 and 10,220,139 and may have |

| | | named inventor of the Asserted Patents | information about those patents, including the conception and reduction to practice. |
|---|---|---|---|
| | | | Dr. Patton may have knowledge regarding Magnolia's products. |
| Shan E. Gaw | May be contacted through counsel for Magnolia | Named inventor of the '483 and '139 patents | Mr. Gaw is a named inventor on the U.S. Patent Nos. 10,039,483 and 10,220,139 patent and may have information about those patents, including the conception and reduction to practice.<br><br>Mr. Gaw may have knowledge regarding Magnolia's products. |
| Jay M. Mizaga | May be contacted through counsel for Magnolia | Named inventor of the '483 patent | Mr. Mizaga is a named inventor on U.S. Patent No. 10,039,483 and may have information about that patent, including the conception and reduction to practice.<br><br>Mr. Mizaga may have knowledge regarding Magnolia's products. |
| Bob Gerberich | May be contacted through counsel for Magnolia | Magnolia Chief Commercial Officer | Mr. Gerberich may have knowledge regarding the sales and marketing of Magnolia's products. |
| Matthew Stuckert | May be contacted through counsel for Magnolia | Magnolia Vice President of Sales | Mr. Stuckert may have knowledge regarding the sales and marketing of Magnolia's products. |

4

| Name | Contact Information | Title and Connection to the Case | Subject Matter |
|---|---|---|---|
| Pathway LLC | On information and belief:<br><br>8779 Cottonwood Ave. Suite 105 Santee, CA 92071 619-415-0103 | Submitter of 510(k) K162233 to market "Kurin Blood Culture Collection Set" | Pathway LLC may have information and witnesses regarding the Accused Products, including the development, conception and reduction to practice, and regulatory approval of the Accused Products. |
| Bob Rogers | On information and belief:<br><br>10755 Scripps Poway Parkway, Suite 257 San Diego, CA 92131 1-888-963-9056 | Kurin, Inc. Co-Founder, CEO and Chairman of the Board | Mr. Rogers may have information regarding the Accused Products, including the development, conception and reduction to practice, operation and manufacture, and regulatory approval of the Accused Products.<br><br>Mr. Rogers may have information regarding sales and marketing and Kurin corporate matters and financials. |
| Matt Heindel | On information and belief:<br><br>10755 Scripps Poway Parkway, Suite 257 San Diego, CA 92131 1-888-963-9056 | Kurin, Inc. Co-Founder and EVP Marketing and Business Development | Mr. Heindel may have information regarding the Accused Products, including the development, conception and reduction to practice, and operation and manufacture of the Accused Products.<br><br>Mr. Heindel may have information regarding customers, sales, and marketing. |

| Dave Lloyd | On information and belief:<br><br>10755 Scripps Poway Parkway, Suite 257<br>San Diego, CA 92131<br>1-888-963-9056 | Kurin, Inc. Co-Founder and EVP Sales | Mr. Lloyd may have information regarding the Accused Products, including the development, conception and reduction to practice, and operation and manufacture of the Accused Products.<br><br>Mr. Lloyd may have information regarding customers, sales, and marketing. |
| --- | --- | --- | --- |
| Gino Kang | Unknown | Kurin, Inc. Co-Founder and Vice President of Research and Development | Mr. Kang may have information regarding the Accused Products, including the development, conception and reduction to practice, and operation and manufacture of the Accused Products. |

In addition to the persons listed, Magnolia expects to use testimony from as-yet unidentified employees and representatives of Defendant to support Magnolia's claims or defenses. Defendant's employees and other representatives have knowledge regarding the design, development, operation, manufacture, sale, use, distribution, revenue, and benefits of the Accused Products, as well as knowledge of the Asserted Patents and Defendant's infringement of the Asserted Patents. Magnolia incorporates by reference all individuals listed in Defendant's disclosures. Magnolia further reserves the right to rely upon all individuals and/or entities listed in any party's disclosures or contentions, or noticed for a deposition. Magnolia also reserves the right to rely on the testimony of anyone listed in interrogatory or other discovery responses. Additionally, Magnolia reserves the right to supplement these lists based on information learned during the course of discovery and Magnolia's continuing investigation.

**(b)** **Documents, ESI, and Tangible Things that LG Has in Its Possession, Custody, or Control and May Use to Support Its Claims or Defenses – Rule 26(a)(1)(A)(ii)**

Based upon presently available information, the following categories describe documents, electronically stored information, and tangible things that Magnolia has in its possession, custody, or control and may use to support its claims or defenses in this action:

1. The Patents-in-Suit;
2. File Histories of the Patents-in-Suit;
3. Documents relating to the prosecution of the Patents-in-Suit;
4. Documents relating to ownership and the right to enforce the Patents-in-Suit;
5. Documents and/or data related to Magnolia's claims of infringement;
6. Documents related to rebutting any of Defendant's defenses, including but not limited to, documents pertaining to any objective indicia of non-obviousness;
7. Documents relating to an appropriate calculation of damages;

Pursuant to this Court's Scheduling Order, Magnolia states that, based on the information presently available to Magnolia and its investigation to date, the following is a list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, listed from the most likely to the least likely:

1. Magnolia shared network drive;

Magnolia will produce copies of documents within its possession, custody or control that may be relevant to the claims or defenses in this case. If any such documents are confidential, Magnolia will produce such documents in accordance with the Court's Protective Order (Dkt. No. 23). Magnolia reserves the right to identify additional documents as discovery proceeds. If any such documents are subject to confidentiality agreements with third parties, Magnolia will produce them after obtaining consent from the affected third parties. Certain documents, to the extent they exist, may also be in the possession of Defendant or other third parties. Magnolia incorporates by reference all documents identified by Defendant, including in Defendant's initial

disclosures and invalidity contentions. Magnolia may discover additional documents in support of its claims. Magnolia reserves all rights to disclose and use whatever additional evidence comes to its attention as discovery and their investigation in connection with this action continues.

      (c)     **Damages – Rule 26(a)(1)(A)(iii)**

At this time, Magnolia has not completed its damages analysis but presents the following preliminary assessment based on information reasonably available to it: Magnolia is entitled to damages adequate to compensate them for Defendant's infringement. In accordance with the patent laws, Magnolia is entitled to at least a reasonable royalty, which will take into account the factors listed in *Georgia Pacific* and other relevant case law. A determination of a reasonable royalty cannot be made at this time because much of the information that Magnolia anticipates will be needed by their expert witnesses to calculate damages is not in Magnolia's possession and will have to be obtained through discovery. In accordance with the patent laws, Magnolia may also be entitled to the profits lost as a result of Defendant's infringement, including but not limited to, lost sales and price erosion. A determination of lost profits damages cannot be made at this time because much of the information that Magnolia anticipates will be needed by their expert witnesses to calculate damages is not in Magnolia's possession and will have to be obtained through discovery. Magnolia further believes that it will be entitled to interest, costs, and reasonable attorneys' fees, as it will prevail and this case should be found exceptional.

Magnolia will supplement this response as information is provided by Defendant and, further, in accordance with all disclosures relating to the opinions and testimony of testifying experts.

(d)      **Insurance Agreements – Rule 26(a)(1)(A)(iv)**

Magnolia is currently unaware of any insurance agreements under which any person or

entity carrying on an insurance business may be liable to satisfy part or all of a judgment entered

in this action or to indemnify or reimburse for payments made to satisfy the judgment.

Pursuant to the Federal Rules of Civil Procedure Rule 26(g)(1), the undersigned certifies

that, to the best of the undersigned's knowledge, information, and belief, formed after reasonable

inquiry, these disclosures are complete and correct as of the time it is made.

Dated:  June 24, 2019                                    FISH & RICHARDSON P.C.


Of Counsel:                                    */s/ Mathias Samuel*
                                               _____
                                               Mathias Samuel
Juanita R. Brooks                              Maria Elena Stiteler
Fish & Richardson P.C.                         Fish & Richardson P.C.
12390 El Camino Real                           3200 RBC Plaza, 60 S. 6th Street
San Diego, CA 92130                            Minneapolis, MN 55402
Telephone:  858-678-5070                       Telephone: (612) 335-5070
brooks@fr.com                                  samuel@fr.com
                                               stiteler@fr.com


                                               Douglas E. McCann (#3852)
                                               222 Delaware Avenue, 17th Floor
                                               P.O. Box 1114
                                               Wilmington, DE 19899
                                               Telephone: (302) 652-5070
                                               dmccann@fr.com


                                               ***Attorneys for Plaintiff***
                                               ***Magnolia Medical Technologies, Inc.***

# EXHIBIT   B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., | |
| *Plaintiff,* | Civil Action No. 1:19-cv-00097-CFC |
| *v.* | **JURY TRIAL DEMANDED** |
| KURIN, INC., | |
| *Defendant.* | |

## DEFENDANT KURIN, INC.'S INITIAL DISCLOSURES AND ESI DISCLOSURES

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and this Court's Scheduling Order (D.I. 24), defendant Kurin, Inc. ("Kurin") hereby makes its initial disclosures and ESI disclosures to plaintiff Magnolia Medical Technologies, Inc. ("Plaintiff" or "Magnolia").

## GENERAL STATEMENT

Kurin has not completed its investigation nor been provided with a complete understanding of the basis for Plaintiff's claims of infringement in this case. The initial disclosures and ESI disclosures made herein are limited to the information and documents reasonably available to Kurin at the present time based on its investigation to date. Kurin's investigation and analysis is ongoing, and discovery from the parties and/or third parties may yield additional information. Kurin therefore reserves the right to supplement, revise, correct, clarify, or otherwise amend the information disclosed herein.

By making these disclosures, Kurin does not waive any applicable privilege or protections, including without limitation, the attorney-client privilege, attorney work product

protection, the joint defense privilege, the common interest privilege, and the trial preparation material privilege.  Nor does Kurin waive any of its objections, and Kurin expressly reserves its right to object to the production, authenticity, relevance, or admissibility of any information included in the categories described.

## I.    Individuals Likely to Have Discoverable Information

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), Kurin states that, based on the information presently available to Kurin and its investigation to date, it believes that the following individuals may either have knowledge or information regarding relevant facts or be in possession of discoverable information that Kurin may use to support its claims or defenses:

| Name | Address and Phone Number | Subject Matter |
|------|--------------------------|----------------|
| Bobby Rogers | Kurin, Inc. (c/o Turner Boyd LLP) | Mr. Rogers may have knowledge about the development, functionality, and features of the accused products.  Mr. Rogers may also have knowledge about the marketing and sales of the accused products. |
| Kevin Nason | Kurin, Inc. (c/o Turner Boyd LLP) | Mr. Nason may have knowledge about the development, functionality, and features of the accused products. |
| Matthew Heindel | Kurin, Inc. (c/o Turner Boyd LLP) | Mr. Heindel may have knowledge about the marketing and sales of the accused products. |
| David Lloyd | Kurin, Inc. (c/o Turner Boyd LLP) | Mr. Lloyd may have knowledge about the marketing and sales of the accused products. |
| Chuck Covington | Kurin, Inc. (c/o Turner Boyd LLP) | Mr. Covington may have knowledge about the financials of the accused |

| | | products. |
|---|---|---|
| Abby Norfleet | Kurin, Inc. (c/o Turner Boyd LLP) | Ms. Norfleet may have knowledge about the accused products and the technology related to this litigation. |
| David Stroup | Pathway LLC (c/o Turner Boyd LLP) | Mr. Stroup may have knowledge about the accused products. |
| Richard G. Patton | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Mr. Patton is the named inventor of U.S. Patent Nos. 9,855,001, 10,028,689, 10,039,483, and 10,220,139. Mr. Patton is also the co-founder and Medical Director of Magnolia. Mr. Patton may have knowledge about the patents-in-suit. Mr. Patton may also have knowledge about the conception, reduction to practice, prosecution, and assignment of the patents-in-suit. Mr. Patton may also have knowledge about Magnolia's business, sales, marketing, finances, research and development, and/or patent portfolio. |
| Gregory J. Bullington | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Mr. Bullington is the named inventor of U.S. Patent Nos. 10,039,483, and 10,220,139. Mr. Bullington is also the co-founder and CEO of Magnolia. Mr. Bullington may have knowledge about the patents-in-suit. Mr. Bullington may also have knowledge about the conception, reduction to practice, prosecution, and assignment of the patents-in-suit. Mr. Bullington |

| | | may also have knowledge about Magnolia's business, sales, marketing, finances, research and development, and/or patent portfolio. |
|---|---|---|
| Jay M. Miazga | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Mr. Miazga is the named inventor of U.S. Patent No. 10,039,483.  Mr. Miazga may have knowledge about the patents-in-suit.  Mr. Miazga may also have knowledge about the conception, reduction to practice, prosecution, and assignment of the patents-in-suit.  Mr. Miazga may also have knowledge about Magnolia's business, sales, marketing, finances, research and development, and/or patent portfolio. |
| Shan E. Gaw | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Mr. Gaw is the named inventor of U.S. Patent Nos. 10,039,483 and 10,220,139.  Mr. Gaw may have knowledge about the patents-in-suit.  Mr. Gaw may also have knowledge about the conception, reduction to practice, prosecution, and assignment of the patents-in-suit.  Mr. Gaw may also have knowledge about Magnolia's business, sales, marketing, finances, research and development, and/or patent portfolio. |
| Michael D. Winternitz | Cooley LLP, 1299 Pennsylvania Avenue, NW Suite 700, Washington, DC 20004-2400, 202-728-7034 | Mr. Winternitz prosecuted the patents-in-suit before the United States Patent and Trademark Office.  Mr. Winternitz may have knowledge about the patents-in-suit.  Mr. Winternitz may also have |

| | | knowledge about the conception, reduction to practice, prosecution, and assignment of the patents-in-suit. |
|---|---|---|
| Robert E. Gerberich | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Mr. Gerberich is the Chief Commercial Officer of Magnolia.  Mr. Gerberich may have knowledge about Magnolia's business, sales, marketing, and finances. |
| Matthew B. Stuckert | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Mr. Stuckert is the Vice President of Sales at Magnolia.  Mr. Stuckert may have knowledge about Magnolia's business, sales, marketing, and finances. |
| Brad R. Nelson | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Mr. Nelson is the Vice President of Marketing at Magnolia.  Mr. Nelson may have knowledge about Magnolia's business, sales, marketing, and finances. |
| Tamara (Tammy) Johnson | Magnolia Medical Technologies, Inc., 200 W. Mercer St., Suite 500, Seattle, WA 98119-5908, 1-888-617-3420 | Ms. Johnson is the Senior Director of National Clinical Operations at Magnolia.  Ms. Johnson may have knowledge about Magnolia's business, products, sales, marketing, and the technology in this litigation. |
| Ward Sparacio | DiA Imaging Analysis, 77 HaEnergia St., Be'er Sheva, Israel | Mr. Sparacio was the Vice President of Sales and Marketing at Magnolia. Mr. Sparacio may have knowledge about Magnolia's business, products, sales, and marketing. |

All individuals whose contact information states "c/o Turner Boyd LLP" may be contacted only through trial counsel for Kurin at Turner Boyd LLP, 702 Marshall Street, Suite

640, Redwood City, CA 94063, 650-521-5930.

Pursuant to this Court's Scheduling Order, Kurin states that, based on the information presently available to Kurin and its investigation to date, it believes that the following custodians are most likely to have discoverable information in their possession, custody, or control, from the most likely to the least likely.

| Name | Title and Role in the Instant Dispute | Subject Matter |
|---|---|---|
| Bobby Rogers | Chairman and CEO of Kurin | Mr. Rogers may have documents about the development, functionality, and features of the accused products.  Mr. Rogers may also have documents about the marketing and sales of the accused products. |
| Kevin Nason | VP - Research and Development of Kurin | Mr. Nason may have documents about the development, functionality, and features of the accused products. |
| Chuck Covington | CFO of Kurin | Mr. Covington may have documents about the financials of the accused products. |
| Matthew Heindel | EVP - Marketing and Business Development of Kurin | Mr. Heindel may have documents about the marketing and sales of the accused products. |
| David Lloyd | EVP - Sales of Kurin | Mr. Lloyd may have documents about the marketing and sales of the accused products. |
| Abby Norfleet | VP - Clinical Outcomes of Kurin | Ms. Norfleet may have documents about the accused products and the technology related to this litigation. |

The general subject matter of information or documents, title, and/or role listed for each

individual does not in any way limit Kurin's right to question or call any individual listed to testify regarding any other subject.

In addition to the persons listed, Kurin reserves the right to rely upon all individuals and/or entities listed in any party's disclosures or contentions, or noticed for a deposition, including in any subsequent disclosure or contention supplementing, revising, correcting, clarifying or otherwise amending any information disclosed therein, in this case or Plaintiff's other cases asserting infringement of any patent related to the patents-in-suit.  Kurin also reserves the right to rely upon individuals listed in any invalidity contentions served by Kurin or any other defendant in Plaintiff's other cases asserting infringement of any patent related to the patents-in-suit with regard to the prior art for which such person is knowledgeable.  Further, Kurin expects to retain one or more experts in this matter and will disclose the identities of its experts, if any, in accordance with the Scheduling Order entered by the Court.  Kurin also reserves the right to rely on the testimony of anyone listed in interrogatory or other discovery responses in this case or Plaintiff's other cases asserting infringement of any patent related to the patents-in-suit.  Additionally, Kurin reserves the right to supplement these lists based on information learned during the course of discovery and Kurin's continuing investigation.  Kurin also reserves the right to use additional witnesses for impeachment.

## II.     Documents, Electronically Stored Information, and Tangible Things in Kurin's Possession, Custody, or Control

Pursuant to Federal Rules of Civil Procedure Rule 26(a)(1)(A)(ii), Kurin states that it has in its possession, custody or control the following categories of documents, electronically stored information, and tangible things that Kurin may use to support its claims or defenses:

- Documents, electronically stored information, and tangible things related to the accused

products, including technical documents, product brochures, and user manuals, which are located at least at Kurin's offices in San Diego, California.

- Marketing documents and things related to the accused products, which are located at least at Kurin's offices in San Diego, California.

- Kurin's purchasing and sales documents related to the accused products, which are located at least at Kurin's offices in San Diego, California.

Pursuant to this Court's Scheduling Order, Kurin states that, based on the information presently available to Kurin and its investigation to date, the following is a list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from most likely to the least likely:

- Kurin's shared network drive,

- Arena document management system, and

- Quickbooks financial management system.

Kurin reserves the right to identify additional documents and/or non-custodial data sources which it determines, in the future, to use in support of its claims and defenses. Kurin has not yet had any discovery from Plaintiff or third parties, and such discovery may persuade Kurin to use additional documents to support its claims and defenses. Kurin also reserves the right to use additional documents for impeachment.

For the avoidance of doubt, Kurin notes that the Federal Rules of Civil Procedure Rule 26(a)(1)(A)(ii) does not require a litigant to disclose documents or things that are not in its possession, custody, or control, and Kurin's identification above expressly omits documents and things that Kurin believes to be in the possession, custody, or control of other parties or third parties.

III.     **Computation of Each Category of Damages Claimed**

Pursuant to Federal Rules of Civil Procedure 26(a)(1)(A)(iii), Kurin states that it is not claiming any damages in this Action other than its attorneys' fees and costs and any other monetary relief that the Court may award Kurin.

This case is in its initial stages and the parties' legal theories are preliminary.  Kurin has not completed its investigation and the disclosures made herein are limited to the information reasonably available to Kurin at the present time based on its investigation to date.  Accordingly, Kurin specifically reserves the right to amend and/or supplement its response here as additional information is discovered and/or developed later in this case.

IV.     **Relevant Insurance Agreements**

Pursuant to Federal Rules of Civil Procedure Rule 26(a)(1)(A)(iv), Kurin states that it is not currently aware of any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

***

Nothing in these initial disclosures and ESI disclosures of documents, witnesses, and other information shall constitute a waiver by Kurin of any claim, right, or defense, whether procedural or substantive, including, but not limited to, the following: any claim or defense as to the sufficiency of Plaintiff's claims; any applicable privilege or immunity, including the attorney-client privilege, the work-product immunity, or any other privilege or immunity; any claim of confidentiality; and the right to object to discovery requests that are not relevant or sufficiently relevant to justify the burden or expense of response.  Nothing in these initial disclosures and ESI disclosures of documents, witnesses, or other information shall constitute an

admission or concession on the part of Kurin with respect to any issues of fact or law.

Pursuant to the Federal Rules of Civil Procedure Rule 26(g)(1), the undersigned certifies that, to the best of the undersigned's knowledge, information, and belief, formed after reasonable inquiry, these disclosures are complete and correct as of the time it is made.

Dated: June 24, 2019

/s/  Karen I. Boyd
Karen I. Boyd
    boyd@turnerboyd.com
Louis L. Wai
    wai@turnerboyd.com
Jacob S. Zweig
    zweig@turnerboyd.com
TURNER BOYD LLP
702 Marshall St., Ste. 640
Redwood City, CA  94063
(650) 521-5930

Jonathan Hangartner
    jon@x-patents.com
X-Patents, APC
5670 La Jolla Blvd.
La Jolla, CA  92037
(858) 454-4313

Kenneth L. Dorsney (#3726)
    kdorsney@morrisjames.com
MORRIS JAMES LLP
500 Delaware Ave., Suite 1500
Wilmington, DE  19801
(302) 888-6800

*Attorneys for Defendant-Counterclaim-Plaintiff Kurin, Inc.*

# EXHIBIT   C

## Jacob Zweig

| | |
|---|---|
| **From:** | Louis Wai |
| **Sent:** | Tuesday, August 27, 2019 4:26 PM |
| **To:** | dmccann@fr.com; brooks@fr.com; oakes@fr.com; suvie@fr.com; riebe@fr.com; samuel@fr.com; stiteler@fr.com; drakulich@fr.com; mihalik@fr.com; KurinServicetoFR@fr.com |
| **Cc:** | Kurin-Magnolia Service |
| **Subject:** | Magnolia v. Kurin: ESI Search Terms |

Counsel:

Under the ESI Order in this case, each party can propose 15 search terms for searching the other party's ESI.  Below are four search terms Kurin proposes initially.  As Corrin commented during the 26(f) conference, this process is always an iterative one, with the parties working together and using test searches to develop search terms that make sense.  Kurin will work with Magnolia on this basis, modifying these proposed terms and/or proposing additional search terms (limited, of course, to the 15 search terms allowed under the ESI Order).

1. Patent AND (licens! OR settlement! OR royalt! OR sale! OR valu! OR apprais! OR negotiat! OR rate!)
2. (001 OR 9855001 OR 9,855,001 OR 689 OR 10028689 OR 10,028,689 OR 483 OR 10039483 OR 10,039483 OR 139 OR 10220139 OR 10,220,139) AND (infring! OR cease! OR desist! OR notice! OR notif! OR suit! OR lawsuit! OR demand!)
3. (001 OR 9855001 OR 9,855,001 OR 689 OR 10028689 OR 10,028,689 OR 483 OR 10039483 OR 10,039483 OR 139 OR 10220139 OR 10,220,139) AND (invalid! OR valid! OR disclos! OR anticipat! OR obvious! OR prior art! OR 102 OR 103 OR novel OR enforceable OR unenforceable OR patentable OR unpatentable OR "information disclosure statement" OR IDS OR "search report" OR "search reports")
4. (Kurin) AND (patent! OR infring! OR litigation! OR suit! OR lawsuit! OR court! OR complaint! OR compet! OR steal! OR finance! OR valu! OR purchase! OR buy OR analy!)

Legend:
"!" = truncation search or root expander

Please let us know if you would like to meet and confer regarding these search terms in advance of running test searches.

Louis

**Louis L. Wai | Turner Boyd LLP | wai@turnerboyd.com | +1 650 779 5842**

# EXHIBIT   D



Karen I. Boyd
650.521.5938
boyd@turnerboyd.com

VIA E-MAIL

January 15, 2020

Sabrina Wilson
Fish & Richardson P.C.
1180 Peachtree St. NE, Suite 2100
Atlanta, GA  30309

**Re:**   ***Magnolia Medical Technologies, Inc. v. Kurin, Inc.***
Civil Action No. 1:19-cv-00097-CFC (District of Delaware)

Dear Sabrina:

Enclosed are the additional samples of Kurin products that Magnolia requested.  Per your request, we are providing ten additional samples of each of D-21221, M-PIV12, M-PIV18, S-PIV4, S-PIV10.

We are still awaiting responses to our January 3, 2020 request for Magnolia samples and our November 1, 2019 proposal about exchanging financial information.  We are also awaiting production of documents based on our August 27, 2019 search terms for Magnolia's ESI, and for Magnolia to propose ESI search terms pursuant to the June 21, 2019 Scheduling Order and Kurin's July 1, 2019 responses to Magnolia's requests for production of documents.

Very truly yours,

Karen I. Boyd

Encls.

I

Page 2



# EXHIBIT   E

**Jacob Zweig**

| | |
|---|---|
| **From:** | Sabrina Wilson <swilson@fr.com> |
| **Sent:** | Thursday, January 23, 2020 3:01 PM |
| **To:** | Karen Boyd; Louis Wai; Kurin-Magnolia Service |
| **Cc:** | Corrin Drakulich; Mathias Samuel; Douglas McCann; Sabrina Wilson |
| **Subject:** | RE: Magnolia/Kurin: Accused Product Samples |
| **Attachments:** | 2020-01-24 Magnolia Depo Subpoena to Kang.pdf; 2020-01-24 Magnolia Doc Subpoena to Kang.pdf; 2020-01-24_Kang Subp_Attachment A_Doc Requests.pdf; 2020-01-24_Kang Subp_Attachment B_ D37 Protective Order.pdf |

Karen,

Regarding Magnolia samples, we do not understand what follow-up you have in mind. ███████████████████████████████████ If that changes, we are happy to revisit the issue.  In the meantime, we have shipped the SteriPath Gen2 samples previously discussed.

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████████████████████████
████████████████████████████████████

Additionally, in an effort to move discovery forward, below we address a number of open issues.  We look forward to hearing from Kurin soon.

Search Terms.

Below is our list of initial proposed search terms to be run on Kurin's ESI.  We note that you have only sent us 4 proposed terms. (*See* August 27, 2019 Wai Email).  Please let us know what additional terms (if any) you propose, as we would like to avoid the inefficiency of running multiple test runs with different sets of terms.

*Magnolia proposed terms*:

- Magnolia OR "MMT" OR SteriPath OR "Steri Path" OR "Gen 2" OR "Gen2" OR "Initial Specimen" OR ISDD

- Greg OR Bullington OR Rich OR Richard OR Patton OR Miazga OR Gaw

- (pat OR patent OR app OR application OR publ OR publication OR prov OR provisional) w/20 (001 OR 689 OR 483 OR 139 OR 082 OR 087 OR 091 OR 856 OR 683 OR 583 OR 584 OR 943)

- (9855001 OR "9,855,001" OR 10028689 OR "10,028,689" OR 10039483 OR "10,039,483" OR 10220139 OR "10,220,139" OR 457082 OR "457,082" OR 20170181683 OR 832087 OR "832,087" OR 20180092583 OR "832,091" OR 832091 OR 0092584 OR 20180092584 OR "899,856" OR 899856 OR 01777943 OR 201801777943)

- (Patent! OR IP OR FTO OR "Freedom to Operate" OR diligence OR opinion*) AND (infring! OR equiv! OR litigat! OR lawsuit OR suit OR valid! OR invalid! OR novel! OR obvious! OR nonobvious! OR inventive OR licens! OR settle! OR royalt! OR sale! OR valu! OR apprais! OR negotiat! OR rate! OR compet! OR steal! OR stole OR copy OR copied OR copying OR purchase! OR buy OR analy! OR strat! OR "design around" OR redesign OR protect OR investor* OR Jack OR Sporacio)

- Ward OR Kyle OR Joel OR Wolverton OR Tammy OR Tamara OR Johnson OR Decker OR Fleming

- (customer* OR hospital* OR account* OR clinic* OR clinician* OR nurse* OR phlebotomist*) AND (steal! OR stole OR poach! OR convert! OR win OR won OR target OR trial)

- (Kurin OR Lock OR Kurinlock OR KISD OR device OR diversion OR product) AND (Isolat! OR sequest! OR corral! OR sideline* OR "initial blood" OR "initial fluid" OR discard OR flash OR flashback OR divert! OR "initial draw" OR "initial volume" OR reservoir OR chamber OR junction* OR transition! OR channel! OR path! OR valve* OR vent! OR seal! OR vortex OR fulcrum OR "specimen discard" OR membrane OR porous OR permeable OR Porex OR plug! OR "blood barrier" OR saturat! OR absor!)

- Pathway OR Calliope OR Stroup OR Deptala OR Cochran OR (Mark w/2 Job) OR (Emily w/2 Davis) OR (Neal w/2 Hartman)


Legend:
"!" = universal/root expander wildcard
"*" = single character wildcard

<u>Custodians</u>.

As you know, the parties agreed to each include up to seven custodians in their ESI search and production. (*See* DI 24 at Ex. B.) In addition to the six custodians Kurin identified in its 6/24/2019 initial disclosures (Bobby Rogers, Kevin Nason, Chuck Covington, Matthew Heindel, David Lloyd, and Abby Norflect), we request that Kurin also include Gino Kang as a custodian. Please confirm Mr. Kang's electronic documents and communications in Kurin's custody and/or control will be searched for responsive ESI in the same way the other Kurin custodial and non-custodial data will be searched.

In addition, with respect to Mr. Rogers, please confirm his personal email accounts, in addition to his Kurin account, will be searched using the agreed-upon search terms ████████
███████████████████████████████████████████████████████████████████████
████████████████████████████████████

Kang Subpoena.

We expect to serve the attached subpoenas on Gino Kang tomorrow.  We understand that Mr. Kang was subpoenaed in the S.D. California case, and that he was represented by Timothy Horton.  Please let us know if you have reason to believe Mr. Kang is no longer represented by Mr. Horton.  Otherwise we will be reaching out to Mr. Horton shortly .


Financials.

As you know, we produced updated Magnolia financials on January 14, 2020. Please let us know when Kurin will be producing its updated financial information.


Documents Produced in C.A. No. 18-cv-1060.

Back in May 2019, we requested that Kurin produce all of the documents it produced in the S.D. California litigation. (*See* Magnolia RFP No. 58.)  We propose that each side re-produce the documents it produced in that case, similar to how we handled the depositions and exhibits from that case.  We will be adding Bates numbers to our documents that correspond to the present case, and we propose that Kurin do the same for its documents.  For efficiency sake, we will produce all of these documents with the confidentiality designation under the current protective order. To the extent either party wants to de-designate specific documents, we agree to work in good faith to do so. Please confirm Kurin will follow this procedure as well. We propose an exchange date of 1/30/2020.  Please confirm your agreement.


Kurin Production Documents to Date

To this date, it appears that Kurin has not produced meta data associated with its production documents.  Per the ESI agreement, to the extent such metadata exists, the parties are required to produce the following metadata:  Custodian, File Path, Native File Link, Text File Link, Full Text, Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, File Type, File Name or File Subject, Author, Date, Date Created, Date Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End.

We request that Kurin promptly provide a load file with the missing meta data for its previously produced files. And, of course, going forward we ask that Kurin provide the meta data with its productions.


Thank you,
Sabrina


**Sabrina Wilson ::** Associate

Fish & Richardson P.C. **::** 404.879.7209 (direct)

---

**From:** Karen Boyd <boyd@turnerboyd.com>
**Sent:** Wednesday, January 22, 2020 5:41 PM
**To:** Sabrina Wilson <swilson@fr.com>; Louis Wai <wai@turnerboyd.com>; Kurin-Magnolia Service

<KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>
**Subject:** RE: Magnolia/Kurin: Accused Product Samples

████████████████████████████████

██████████████████████████████████████████████████
██████████████████████████████████████

---

**From:** Karen Boyd
**Sent:** Monday, January 20, 2020 3:07 PM
**To:** 'Sabrina Wilson' <swilson@fr.com>; Louis Wai <wai@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>
**Subject:** RE: Magnolia/Kurin: Accused Product Samples

Thank you for providing those samples. ████████████████████████████████████
██████████████████████████████

---

**From:** Sabrina Wilson [mailto:swilson@fr.com]
**Sent:** Friday, January 17, 2020 8:53 AM
**To:** Karen Boyd <boyd@turnerboyd.com>; Louis Wai <wai@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; Sabrina Wilson <swilson@fr.com>
**Subject:** RE: Magnolia/Kurin: Accused Product Samples

Karen,

████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████

We have collected from the client and are prepared to send you ████████████████████
████████████████████████████████████████████████████████, which seems
consistent with your request for "non-BD push button extension versions with a needle, as well as luer
extension versions."  But please let us know if you require additional samples.

Thank you for sending the previously requested Kurin samples.  We additionally request 10 samples
of the Kurin "K" products, in any combination of the K-11221, K-11223 and K-11225 versions.  Please
let us know when we can expect these.

Thank you,
Sabrina

**Sabrina Wilson :: Associate**

Fish & Richardson P.C. :: 404.879.7209 (direct)

---

**From:** Karen Boyd <boyd@turnerboyd.com>
**Sent:** Friday, January 10, 2020 8:43 PM
**To:** Sabrina Wilson <swilson@fr.com>; Louis Wai <wai@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>
**Subject:** RE: Magnolia/Kurin: Accused Product Samples

This position is a little surprising, given that it is in an email string where Magnolia requests Kurin samples that differ only in the length of tubing attached to them.  But we are sensitive to the burden on Magnolia.

We would like 10 samples each of Magnolia's ▮▮▮▮▮▮▮▮▮ (and if there are multiple variants of Magnolia's ▮▮▮▮▮▮▮▮▮▮▮▮, 20 samples, including multiple representatives of each variant). ▮▮▮▮▮▮▮▮▮▮▮▮▮ If these descriptions are unclear, you will need to send us a listing of catalog numbers and descriptions (which I do not see on Magnolia's website), and we can let you know which ones we would like samples of.

---

**From:** Sabrina Wilson [mailto:swilson@fr.com]
**Sent:** Thursday, January 9, 2020 4:24 PM
**To:** Karen Boyd <boyd@turnerboyd.com>; Louis Wai <wai@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; Sabrina Wilson <swilson@fr.com>
**Subject:** RE: Magnolia/Kurin: Accused Product Samples

Karen,

We are happy to provide additional samples of Magnolia products. However, it appears you are asking us to produce 10 samples of every Magnolia product that practices an asserted patent (or "competes with products that practice the asserted patents")—even where those products only differ in ways that have no bearing on this case (e.g., 21g needle vs. 23g needle). If this is indeed what you request, then we would expect Kurin to produce 10 samples of every single accused product identified in our infringement contentions.

Of course, in our request, we were trying to be judicious by asking for representative samples. We would ask Kurin to do the same courtesy.  As such, in exchange for Kurin producing the representative samples we've requested below, Magnolia would be happy to produce 10 each of representative Magnolia products, specifically 10 Steripath Gen 2 products with safety needles (a mix of 21G and 23G) and 10 Steripath Gen 2 products with Luer/IV starts. Please confirm your agreement.

Thank you,
Sabrina

**Sabrina Wilson :: Associate**

Fish & Richardson P.C. :: 404.879.7209 (direct)

**From:** Karen Boyd <boyd@turnerboyd.com>
**Sent:** Friday, January 03, 2020 7:20 PM
**To:** Sabrina Wilson <swilson@fr.com>; Louis Wai <wai@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>
**Subject:** RE: Magnolia/Kurin: Accused Product Samples

We can provide these samples, and request 10 samples of each Magnolia product that practices any asserted patent or that competes with products that practice the asserted patents.

---

**From:** Sabrina Wilson [mailto:swilson@fr.com]
**Sent:** Tuesday, December 24, 2019 7:55 AM
**To:** Louis Wai <wai@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Sabrina Wilson <swilson@fr.com>; Douglas McCann <DMcCann@fr.com>
**Subject:** Magnolia/Kurin: Accused Product Samples


Counsel,

Magnolia would like additional samples of the accused Kurin products.  Specifically, we request 10 additional samples of each of the following SKUs:

- D-21221
- M-PIV12
- M-PIV18
- S-PIV4
- S-PIV10

Please let us know by January 3, 2020, if Kurin agrees to provide Magnolia with the additional samples.

If Kurin would like more samples of Magnolia's products, we are happy to provide those.  If cost is an issue, we are happy to pay for the Kurin products (although we would then ask the same of Kurin if it wants additional Magnolia products).

Thank you,
Sabrina

**Sabrina Wilson ::** Associate
Fish & Richardson P.C.
1180 Peachtree St. NE, Suite 2100, Atlanta, GA 30309
404.879.7209 (direct) | 706.767.2313 (mobile)

*************************************************************************************************************
************************
This email message is for the sole use of the intended recipient(s) and may contain confidential
and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the

intended recipient, please contact the sender by reply email and destroy all copies of the original message.
*********************************************************************************************************
*************************

*********************************************************************************************************
*************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
*********************************************************************************************************
*************************

*********************************************************************************************************
*************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
*********************************************************************************************************
*************************

*********************************************************************************************************
*************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
*********************************************************************************************************
*************************

# EXHIBIT   F

## Jacob Zweig

| | |
|---|---|
| **From:** | Louis Wai |
| **Sent:** | Wednesday, March 4, 2020 5:18 PM |
| **To:** | Sabrina Wilson; Jacob Zweig; Kurin-Magnolia Service |
| **Cc:** | Corrin Drakulich; Mathias Samuel; Douglas McCann; btownsend@morrisjames.com; Ken Dorsney |
| **Subject:** | RE: Magnolia/Kurin: Summary of 2/13/2020 Meet & Confer |

Hi Sabrina,

We have three identified individuals who, based on their roles at Magnolia, we believe may have more, non-cumulative relevant documents than at least some of the six individuals identified by Magnolia.  In order to find the most appropriate document custodians, it would be most efficient for Magnolia to run our search terms against all nine people, as we previously proposed.

Magnolia and its counsel have better information than Kurin to determine the custodians with the most relevant, non-cumulative information.  It is unfair to require Kurin to pick 7 custodians in the blind.  If Magnolia is not willing to perform test searches on all 9 custodians, Kurin is more likely to need to seek leave of court under the ESI order for additional custodians.  If Magnolia would like to bear that risk rather than do organized searching at the front end, please proceed with searching the six custodians that Magnolia has represented are "most likely to have discoverable information," as well as Tamara Johnson (Sr. Dir. of National Clinical Operations).

Thanks,
Louis


**Louis L. Wai | Turner Boyd LLP |  wai@turnerboyd.com | +1 650 779 5842**


---

**From:** Sabrina Wilson <swilson@fr.com>
**Sent:** Tuesday, March 3, 2020 5:54 PM
**To:** Louis Wai <wai@turnerboyd.com>; Jacob Zweig <zweig@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; btownsend@morrisjames.com; Ken Dorsney <kdorsney@morrisjames.com>; Sabrina Wilson <swilson@fr.com>
**Subject:** RE: Magnolia/Kurin: Summary of 2/13/2020 Meet & Confer


Louis,

I'm not sure what additional information you are seeking.  Perhaps if you share how it is that Kurin identified the custodians it believes are "most likely to have discoverable information," listed in Kurin's initial disclosures, we could get a better sense of what it is you are asking us to disclose.

More to the point though, if you disagree with Magnolia's choice of custodians, you are free to choose others.  We expect you to provide your list of no more than 7 custodians by tomorrow, March 4.  Otherwise, we will proceed using the 6 custodians we identified.

Thanks,
Sabrina

**Sabrina Wilson ::** Associate

Fish & Richardson P.C. **::** 404.879.7209 (direct)

---

**From:** Louis Wai <wai@turnerboyd.com>
**Sent:** Tuesday, March 03, 2020 1:44 PM
**To:** Sabrina Wilson <swilson@fr.com>; Jacob Zweig <zweig@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; btownsend@morrisjames.com; kdorsney@morrisjames.com
**Subject:** RE: Magnolia/Kurin: Summary of 2/13/2020 Meet & Confer

Hi Sabrina,

Can you let us know how it is that Magnolia "identified the custodians it believes most likely to have discoverable information" in the initial disclosures?

Thanks,
Louis

---

**From:** Sabrina Wilson <swilson@fr.com>
**Sent:** Friday, February 28, 2020 1:32 PM
**To:** Louis Wai <wai@turnerboyd.com>; Jacob Zweig <zweig@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; btownsend@morrisjames.com; Ken Dorsney <kdorsney@morrisjames.com>; Sabrina Wilson <swilson@fr.com>
**Subject:** RE: Magnolia/Kurin: Summary of 2/13/2020 Meet & Confer

Hi, Louis.

With respect to your request re custodians, we do not agree that Magnolia should run searches on 9 custodians. Per the ESI Order, Magnolia identified the custodians it believes most likely to have discoverable information. You are free to disagree with Magnolia's selection of custodians, but we will not engage in a fishing expedition on Kurin's behalf by searching the ESI for 9 custodians, when the parties agreed to 7 custodians. (ESI Order ¶ 2(a)). Please choose the 7 custodians you want, and we will proceed with running search terms and then meeting and conferring about the reasonableness and proportionality of the results. If you do not tell us which 7 you want by March 4, we will proceed with the 6 custodians we identified in our initial disclosures.

Thank you,
Sabrina

**Sabrina Wilson :: Associate**

Fish & Richardson P.C. :: 404.879.7209 (direct)

---

**From:** Louis Wai <wai@turnerboyd.com>
**Sent:** Wednesday, February 26, 2020 8:21 PM
**To:** Sabrina Wilson <swilson@fr.com>; Jacob Zweig <zweig@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; btownsend@morrisjames.com
**Subject:** RE: Magnolia/Kurin: Summary of 2/13/2020 Meet & Confer

Hi Sabrina,

Our proposed list of search terms is attached.

Regarding custodians—the ESI Order requires the parties to search the ESI maintained by the individuals identified in their initial disclosures as most likely to have discoverable information.  Magnolia identified Bullington, Patton, Gaw, Miazga, Gerberich, and Stuckert in its initial disclosures.  It appears to us that the identified custodians may not in fact be the ones most likely to have discoverable information.  For example, we believe Tamara Johnson (Sr. Dir. of National Clinical Operations), Ward Sparacio (past VP of Sales and Marketing), and Brad R. Nelson (VP of Marketing) may be more likely to have discoverable information than some of the individuals identified in Magnolia's initial disclosures.  Johnson, Sparacio, and Nelson would appear to have direct and first-hand information about marketing and operations that those identified in Magnolia's initial disclosures would not have.  We request that Magnolia perform test searches on all 9 individuals (Bullington, Patton, Gaw, Miazga, Gerberich, Stuckert, Johnson, Sparacio, and Nelson) so we can identify which 7 custodians are most likely to have discoverable information.

We propose after performing an initial test search based on the parties' respective proposed search terms, the parties meet and confer to determine if the searches generate reasonable and proportional results.  If the results are not reasonable and proportional, the parties can tweak their respective search terms.  Please let us know if you agree with this approach.

Finally, we will prioritize the production of Mr. Kang's ESI and will do our best to produce those documents as quickly as possible.

Thanks,
Louis


**Louis L. Wai | Turner Boyd LLP |  wai@turnerboyd.com | +1 650 779 5842**

This email may contain material that is confidential, privileged, and/or attorney work product for the sole use of the intended recipient. Any review, reliance, or distribution by others or forwarding without permission is prohibited. If you are not the intended recipient, please notify the sender and delete all copies.

---

**From:** Sabrina Wilson <swilson@fr.com>
**Sent:** Wednesday, February 26, 2020 9:05 AM
**To:** Jacob Zweig <zweig@turnerboyd.com>; Kurin-Magnolia Service <KurinService@turnerboyd.com>

**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; Sabrina Wilson <swilson@fr.com>; btownsend@morrisjames.com
**Subject:** RE: Magnolia/Kurin: Summary of 2/13/2020 Meet & Confer


Jacob,

Following up on my below 2/18/2020 email, we again request that Kurin promptly provide its proposed list of search terms so that we can move forward with ESI discovery.  If we do not receive your final proposed list of terms by March 4, 2020, we will proceed with ESI collection and production using only the 4 terms Kurin previously proposed, and with respect to custodial data, we will include only those custodians disclosed in Magnolia's 6/24/2019 Rule 26 disclosures (Bullington, Patton, Gaw, Miazga, Gerberich, and Stuckert).

Additionally, as you know, we are working with Mr. Kang's attorney to schedule Mr. Kang's deposition for the latter part of March. Please confirm that Kurin will prioritize Mr. Kang's ESI so as to provide Magnolia with Mr. Kang's responsive documents no later than March 10th.  Please also confirm that Kurin will use the search terms Magnolia proposed (per my 1/23/2020 and 1/31/2020 emails) for Mr. Kang's data and Kurin's other ESI.

Thank you,
Sabrina


**Sabrina Wilson :: Associate**

Fish & Richardson P.C. :: 404.879.7209 (direct)

---

**From:** Sabrina Wilson <swilson@fr.com>
**Sent:** Tuesday, February 18, 2020 7:16 PM
**To:** Jacob Zweig <zweig@turnerboyd.com>; btownsend@morrisjames.com; Kurin-Magnolia Service <KurinService@turnerboyd.com>
**Cc:** Corrin Drakulich <Drakulich@fr.com>; Mathias Samuel <samuel@fr.com>; Douglas McCann <DMcCann@fr.com>; Sabrina Wilson <swilson@fr.com>
**Subject:** Magnolia/Kurin: Summary of 2/13/2020 Meet & Confer

Jacob & Bryan,

Thank you for the meet and confer on Thursday, February 13. I write to summarize what we discussed and our understanding of the parties' respective positions, as well as our responses to issues we said we would get back to you on.

- Bob Roger's personal email
    - Thank you for confirming that Kurin is willing to include Mr. Rogers' personal email accounts in Kurin's ESI search and production.
    - Regarding your request that we similarly search the personal email accounts of Dr. Patton and Mr. Bullington, we can agree that any personal email used for business purposes will be subject to Magnolia's ESI search/production. As we stated on the call, our understanding is that Dr. Patton conducted very little business by email, and whatever email he had that related to Magnolia business has been retained by Magnolia and will be included in Magnolia's ESI search and production.

4

- For Mr. Bullington, our understanding is that he has not used his personal email to conduct Magnolia business, but we will confirm and get back to you shortly.

- Production of Financial Information
  - We requested that you bring current the financial information Kurin provided in response to Magnolia's ROG 7 and asked for a date certain by which these updated financials will be produced.
  - You stated that, in addition to updating the financial information already provided, you are preparing a broader set of financial related information (e.g., as detailed in Mr. Wai's 11/1/2019 letter). You requested that Magnolia similarly prepare the broader set of data and that the parties exchange all of the data on an agreed-upon date. We explained that we agree in principal and are working to collect the information we understand Kurin to be seeking, but in the interim we would appreciate if Kurin could produce the updated financials we've requested since Magnolia has already provided its updated sales data (through end of 2019). We look forward to hearing back from you on this.

- S.D. Cal. litigation documents
  - We understand the parties are in agreement to produce the S.D. Cal. documents in the present case. With respect to Bates numbers, the parties agreed to maintain the original Bates numbers from the S.D. Cal. litigation but also add Bates numbers to the documents for the instant litigation. With respect to confidentiality designations, you proposed (and we agreed) that instead of marking the documents with an additional confidentiality designation, the parties would agree to treat all documents labeled with any confidentiality designation from the S.D. Cal. case as "confidential – pursuant to protective order" under the protective order in the present case.
  - We expect our production to go out tomorrow. Please let us know when we can expect to receive Kurin's production.

- Samples of Magnolia's ███████████
  - As we previously explained, ████████████████████████████████████████████
    ████████████████████████████████████████
  - In response to your suggestion that, because ████████████████████████
    ████████████████████████████████████████████████████
    ████████████████████████████████████████████████████████
    ███████████████████████████████████████████
    ████████████████████████████████████████████████████
    ████████████████████████████████████████████
  - You said this was a reasonable position and would pass along to your team.

- Samples of Kurin's "K" products
  - As we explained on the call, we would like samples of each Kurin product (prototype or otherwise) that differs in design from the current commercial embodiments. ████
    ████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ████████████████████████████████████████████████
    ██████████████████████████████████████████████



- <u>Search terms</u>
  - o You said you are currently working to update Kurin's proposed search terms and will get them to us as soon as possible.

- <u>Kurin's Interrogatory Responses</u>
  - o Re ROGs 2 & 4
    - ▪ You stated that it is premature for Kurin to provide substantive responses to interrogatories 2 (regarding Kurin's non-infringement contentions) and 9 (regarding Kurin's other affirmative defenses), and that Kurin does not intend to respond to these interrogatories until after fact discovery—and for interrogatory 2 not until after claim construction and expert discovery. As we stated on the call, this is unacceptable. Kurin's deadline for responding to these interrogatories was 30 days after they were served, *i.e.* September 30, 2019. These interrogatories ask for an identification of each claim element Kurin contends is not present in its accused products, the factual bases for such contentions, and for Kurin's other affirmative defenses, the persons most knowledgeable of the relevant facts, the documents relating thereto, and the evidence upon which Kurin intends to rely to support its contentions. Without such information Magnolia will be substantially and materially prejudiced during the fact discovery process.
    - ▪ We are aware of no authority that permits Kurin to withhold this highly relevant information. We understand it to be standard practice in Delaware for a defendant to provide non-infringement contentions (and the factual bases for other affirmative defenses) by way of interrogatory response during fact discovery. Indeed, our scheduling order specifically permits contention interrogatories. (*See* DI 24 at 7, ¶ 9(d).)  If you have authority supporting your position, please provide it. Otherwise, we are prepared to take this issue to Judge Connolly if necessary.
    - ▪ Please confirm Kurin will supplement to provide fulsome interrogatory responses no later than March 2, 2020, or otherwise let us know what times you are available this Friday to meet and confer with local counsel.
  - o Re ROG 8
    - ▪ You stated that any response to interrogatory 8 (regarding design/redesign efforts to avoid infringement) would be privileged, and any non-privileged information would be evident in Kurin design documents and available through Kurin witness depositions. As we explained on the call, Kurin's refusal to provide a substantive response to the interrogatory on this basis is unacceptable. If there is non-privileged information relating to such efforts in Kurin design documents,

that information is directly responsive to this interrogatory and must be identified in Kurin's response. If, on the other hand, there have been no design/redesign efforts to avoid infringement, that non-privileged fact is directly responsive to this interrogatory and must be so stated in Kurin's response. As such, we asked that Kurin promptly supplement its interrogatory response to either state that there have been no such design/redesign efforts or, if there were, to identify all non-privileged facts and design documents relating to said design/redesign efforts.

- With this clarification, you said you would get back to us regarding supplementing Kurin's response to interrogatory 8. We look forward to your prompt response.

o Re ROG 3

- In response to interrogatory 3 (regarding Kurin's denial of willful infringement), Kurin has provided only the dates it learned of the asserted patents. We therefore requested that, to the extent Kurin intends to rely on any additional facts or theories in its defense to willful infringement, Kurin promptly supplement its interrogatory response with that information to properly put Magnolia on notice and allow Magnolia to timely take discovery.

- You said you would get back to us regarding supplementing. We look forward to your prompt response.

- We also note that the scheduling order does not include a deadline for disclosing opinions of counsel. Can we agree that Kurin will disclose any opinions of counsel on which it intends to rely no later than May 15, 2020? This date seems reasonable as it is the deadline for exchanging privilege logs, and would also allow Magnolia time to take any further discovery warranted.


Thank you,
Sabrina


**Sabrina Wilson :: Associate**

Fish & Richardson P.C.

1180 Peachtree St. NE, Suite 2100, Atlanta, GA 30309

404.879.7209 (direct) | 706.767.2313 (mobile)

********************************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
********************************************************************************************************

********************************************************************************************************
This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.
********************************************************************************************************

*******************************************************************************************
**************************
This email message is for the sole use of the intended recipient(s) and may contain confidential
and privileged information. Any unauthorized use or disclosure is prohibited. If you are not the
intended recipient, please contact the sender by reply email and destroy all copies of the original
message.
*******************************************************************************************
**************************

# EXHIBIT  G



Louis Wai
650.779.5842
wai@turnerboyd.com

VIA E-MAIL

July 28, 2020

Sabrina Wilson
swilson@fr.com
Fish & Richardson P.C.

**Re:**   ***Magnolia Medical Technologies, Inc. v. Kurin, Inc.***
Civil Action No. 1:19-cv-00097-CFC (District of Delaware)

Dear Sabrina:

We are writing about problems with Magnolia's document production.

The Scheduling Order required the parties to conduct searches of "emails and other ESI maintained by the custodians" that the parties identified.  (D.I. 24, Exhibit B at ¶ 3.c.)  The parties were to identify the "7 custodians (absent a showing of good cause for additional custodians) most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely."  (D.I. 24, Exhibit B at ¶ 2.a.)

On February 26, 2020, after receiving Magnolia's list of document custodians, and noticing that the first four were simply the named inventors of the patents-in-suit, we had raised the concern that:

> It appears to us that the identified custodians may not in fact be the ones most likely to have discoverable information.  For example, we believe Tamara Johnson (Sr. Dir. of National Clinical Operations), Ward Sparacio (past VP of Sales and Marketing), and Brad R. Nelson (VP of Marketing) may be more likely to have discoverable information than some of the individuals identified in Magnolia's initial disclosures.  Johnson, Sparacio, and Nelson would appear to have direct and first-hand information about marketing and operations that those identified in Magnolia's initial disclosures would not have.  We request that Magnolia perform test searches on all 9 individuals (Bullington, Patton, Gaw, Miazga, Gerberich, Stuckert, Johnson, Sparacio, and Nelson) so we can identify which 7 custodians are most likely to have discoverable information.

Kurin's request was reasonable at the time, given that secondary inventors who have limited roles in companies frequently have few relevant documents, whereas high-level employees in sales, marketing, and operations usually have large

numbers of relevant documents.  Magnolia declined to do test searches on the additional individuals we identified and stated that the custodians it had identified are the ones "it believes most likely to have discoverable information."  Magnolia also declined our request that Magnolia explain how it identified the custodians it believed most likely to have discoverable information.  Magnolia refused to give any additional information to Kurin, forcing Kurin to choose seven document custodians blind.

Magnolia has since produced documents for the six custodians it identified, plus (at Kurin's educated-guess election) Tamara Johnson.  Based on Magnolia's document production, it is clear that Kurin's concerns were well-founded.  Shan Gaw and Jay Miazga identified by Magnolia are not the custodians with the third and fourth most discoverable information.  Specifically, Magnolia only produced 83 Shan Gaw documents and 28 Jay Miazga documents, compared to 5,385 to 36,462 documents for the other five document custodians.  Magnolia's document production also confirms Kurin's suspicion that Mr. Ward Sparacio and Mr. Brad R. Nelson are custodians with more discoverable information.  In the documents Magnolia produced—without Magnolia even searching emails and other ESI maintained by Mr. Sparacio and Mr. Nelson—Mr. Sparacio is in the to/from/cc/bcc field of 5328 emails and Mr. Nelson is in the to/from/cc/bcc field of 3233 emails.

We request that Magnolia additionally search and produce custodial documents for Mr. Sparacio and Mr. Nelson.  Please confirm by July 31, 2020 if Magnolia will supplement its production with these documents, and on what time frame.  We will need to review these documents in order to decide whether to depose Mr. Sparacio and Mr. Nelson.

Second, Magnolia produced exactly 20,000 custodial documents belonging to Tamara "Tammy" Johnson.  Obviously, the likelihood of a witness possessing such a round number of documents (to five significant figures) is highly unlikely.  Please confirm that we have received all of Ms. Johnson's documents and the 20,000 number—as unlikely as it is—is correct.

Finally, Magnolia has produced 14,533 documents with the custodian "Unspecified Custodian" and 25 documents with the custodian "None."  Please provide the correct custodian information for these documents.

Best regards,

/s/ Louis Wai

# EXHIBIT   H



Fish & Richardson P.C.
1180 Peachtree Street, NE
21st Floor
Atlanta, GA 30309

404 892 5005 main
404 892 5002 fax

August 6, 2020

**Sabrina Wilson**
Associate
swilson@fr.com
404 879 7209 direct

***VIA EMAIL***

Jacob Zweig
Turner Boyd LLP
702 Marshall Street, Suite 640
Redwood City, California 94063

Re:     *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 19-00097-CFC (USDC-DE)

Jacob,

In response to the various discovery-related issues you include in your August 3 letter, please see below.

Custodial Documents for Ward Sparacio and Brad Nelson. For the reasons stated in our July 28, 2020 letter, Kurin has not shown good cause for Magnolia to collect and produce custodial documents for additional Magnolia custodians. Nonetheless, with respect to Mr. Sparacio, we will agree to collect and produce any remaining custodial data in Magnolia's possession that can be identified with reasonable efforts. If you still wish to meet and confer on this issue, please let us know.

Privilege Logs. On August 5, Magnolia responded to Kurin's July 14 and 27 emails regarding Magnolia's privilege log. In our August 5 correspondence, we raised a number of Kurin's continued deficiencies and look forward to Kurin's prompt response.

Deposition Scheduling. We are diligently working with the list of witnesses Kurin identified for deposition to determine their availabilities. We are doing the same for the subpoenaed third-parties, as well as determining a timeline for third-party document production. We will provide the dates to Kurin as soon as we are able.

Magnolia's Responses to Kurin's Interrogatory Nos. 1, 3, 4, 7, and 8. On July 15, 2020, Magnolia supplemented it responses to Kurin Interrogatory Nos. 1, 3, 4, 7, and 8, which you allege remain deficient. We are reviewing the alleged issues you raise with each of Magnolia's responses and will respond accordingly.

Stipulation Regarding Authenticity. We received your proposed Stipulation Regarding Authenticity. However, Magnolia is unable to stipulate in a vacuum in advance of depositions. If Kurin would like to provide us with a subset of documents you would like us to stipulate to prior to specific depositions, we would be happy to consider stipulation via that approach.



**Jacob Zweig**
August 6, 2020
Page 2

<u>Exchange of Interrogatory Verifications</u>. With respect to your proposed exchange of interrogatory verifications, we can agree that for any witness who will be verifying a Magnolia interrogatory response, we will provide his or her verification prior to his or her deposition.

***Additional Discovery-Related Issues***.

Following, we address a number of additional outstanding discovery-related issues and look forward to Kurin's response.

<u>Bob Rogers' Custodial Data</u>. Upon review of Kurin's document productions and privilege log, Magnolia renews its request for Kurin to collect and produce all of the responsive custodial data of Bob Rogers in his personal email accounts. It is now clear that Mr. Rogers has long conducted Kurin business from his personal Gmail and Apple (.me) accounts, despite Kurin's prior representations to the contrary.

As you may recall, Magnolia first requested that Kurin search Mr. Rogers' personal email on January 23, 2020, citing the few examples Magnolia then possessed that suggested Mr. Rogers conducted Kurin business via his personal email accounts. (*See* 1/23/2020 email fr Wilson to Boyd et al.) On our February 13 meet and confer, Kurin took the position that any search of Mr. Rogers' personal email accounts would be contingent on Magnolia agreeing to search Greg Bullington's personal email. (*See* 2/18/2020 email fr Wilson to Zweig et al.) Kurin maintained this position even after Magnolia confirmed that Mr. Bullington did not use his personal email to conduct Magnolia business. (*See* 3/20/2020 email fr Drakulich to Wai et al.)  At that time, Kurin represented that "it is not Mr. Rogers' 'practice' to use his personal email for business communications either," and dismissed the example emails from Rogers' personal account Magnolia had identified by suggesting they were anomalous and limited to a time prior to Rogers having a company email account. (*See* 3/20/2020 email fr Wai to Drakulich et al. ("It is not Mr. Rogers' 'practice' to use his personal email for business communications either. However, it is very common for those involved in creating companies to use a personal email account for early communications, often because there is no company email account available.").) Based on Kurin's representations, Magnolia stopped pressing the issue.

We now know from Kurin's recent document productions and privilege log that Kurin's representations were false. There are over 500 email messages in Kurin's production sent from, forwarded from, or received by "███████████" or "███████████." These emails span from 2014 to 2019, with more than 400 of them dated after January 1, 2017—well after Kurin company email accounts (including Rogers') were established. Further, according to Kurin's privilege log, Kurin is withholding close to 90 emails sent to or from one of these personal email addresses of Mr. Rogers.

In view of these changed circumstances, please confirm that Kurin will search Mr. Rogers' personal email accounts using Magnolia's search terms, and produce all resulting documents no



**Jacob Zweig**
August 6, 2020
Page 3

later than 7 days before Mr. Rogers' deposition, to avoid any further prejudice to Magnolia from Kurin's prior misrepresentations.

Kurin's Response to Magnolia Interrogatory No. 2. The parties first met and conferred regarding Kurin's response to Magnolia Interrogatory No. 2 (non-infringement contentions) on February 13, 2020. Magnolia requested Kurin's supplemental response to Interrogatory No. 2 over the next several months. (*See* e.g., 2/18/2020, 3/18/2020, 3/26/2020, 4/7/2020, 5/22/2020 emails fr Wilson to Zweig.) On June 10, 2020, we informed Kurin that we would not move forward with a motion to compel Kurin's response to Interrogatory No. 2 until after Magnolia provided its forthcoming amended infringement contentions. (*See* 6/10/2020 email fr Wilson to Zweig.) Magnolia sent its amended infringement contentions on July 17, 2020. Please confirm Kurin will supplement its response to Interrogatory No. 2 by August 21, 2020.

Kurin's Response to Magnolia Interrogatory Nos. 11 and 12. On March 26, we raised issues with Kurin's March 2, 2020 responses to Magnolia Interrogatory No. 11 (advantages/benefits of accused products) and No. 12 (pre-market analysis). (*See* 3/26/2020 email fr Wilson to Zweig.) We specifically identified Kurin's deficiencies and requested a meet and confer re Interrogatory Nos. 11 and 12, to which we got no response. On April 7, we again requested that Kurin respond on those issues. (*See* 4/7/2020 email fr Wilson to Zweig.) To date, Kurin has not responded to Magnolia regarding Kurin's deficient responses to Interrogatory Nos. 11 and 12. Please confirm Kurin will supplement its responses to Interrogatory Nos. 11 and 12 by August 21, 2020.

Kurin's Response to Magnolia Interrogatory No. 14. Magnolia's Interrogatory No. 14 asks Kurin to "describe in detail all design changes, product failures, and quality concerns and/or issues for any Accused Products…including but not limited to the design changes referenced" by Bob Rogers in his May 24, 2019 deposition. Kurin's March 16 response was void of substance and only quoted back to Magnolia portions of the very Bob Rogers' May 24, 2019 deposition referenced in Interrogatory 14. This is not an appropriate interrogatory response. Please confirm Kurin will supplement its response to Interrogatory No. 14 by August 21, 2020.

Thank you,

Sabrina Wilson

# EXHIBIT   I

# Ward Sparacio

## Contact

www.linkedin.com/in/ward-sparacio-013b514 (LinkedIn)

## Top Skills

CEO
Strategic Planning
Venture Financing

CEO at Sweet River Trading Company
Greater Seattle Area

## Experience

**Sweet River Trading Company**
CEO
March 2020 - Present (6 months)
Stockton, California, United States

**Bright Light Medical Innovations**
Co Managing Partner
February 2020 - Present (7 months)
Bright Light Medical is committed to sourcing hard-to-find PPE and other supplies to the friends/customers we have developed over the past 25+ years in the healthcare marketplace.

**Altus Alliance**
Venture Partner & Advisor
January 2013 - Present (7 years 8 months)

**DiA Imaging Analysis**
Vice President - Business Development & Sales
April 2019 - April 2020 (1 year 1 month)
Tel Aviv Area, Israel

**NurseGrid**
Vice President, Sales
June 2018 - February 2019 (9 months)
Portland, Oregon Area

**Magnolia Medical Technologies**
Vice President, Sales and Marketing
May 2013 - June 2017 (4 years 2 months)
Greater Seattle Area

**Carrot Medical**
Chief Executive Officer
September 2008 - October 2012 (4 years 2 months)

Confirma

Vice President, Global Sales

January 2007 - September 2008 (1 year 9 months)

Bellevue, WA; Berlin, Germany

SonoSite Inc

Director - US Sales

April 1999 - January 2007 (7 years 10 months)

ATL Ultrasound

Sales Executive

1995 - 1999 (4 years)

ATL / Philips Medical Systems

Account Executive

1995 - 1999 (4 years)

Picker HCP

Sales Representative

1993 - 1995 (2 years)

———

## Education

Pacific Union College

· (1987 - 1992)

# EXHIBIT   J

## Contact

www.linkedin.com/in/brad-nelson (LinkedIn)

## Top Skills

Product Development

Product Marketing

Laboratory Automation

# Brad Nelson

Senior Vice President, Marketing and Corporate Strategy at IONpath Inc.

San Francisco

## Summary

An experienced leader adept at translating market opportunities into reality.  Skilled at strategic planning, portfolio management, and guiding the marketing initiatives of fast paced, leading organizations. Proven ability to identify the key attributes that resonate with the market, building a strong corporate brand and driving the market awareness and product differentiation necessary to succeed.

• P&L Management: Responsible for annual bookings and revenue plans for multiple $40+M organizations, driving an average of 30% YOY growth while remaining EBITA positive.
• Strategic Planning: Leader of comprehensive multi-year growth plans, using analytics to build business models for market opportunity assessment and M&A evaluation/execution.
• New product development and launch: Vast experience in all levels of product development and launch for integrated software and hardware products including comprehensive software platforms, electromechanical hardware, and high volume consumable products.
• Brand development and marketing communication: Built start-up brands into industry leadership positions, and integrated brands post-acquisition.
• Talent recruitment & development: Built two marketing organizations from the ground up, developing organizational and industry leaders along the way.  Retention has remained >95%, and my teams are essential to organizational success.
• Opportunity Assessment: Adept at the evaluation of technology, markets and organizations to drive growth through partnerships, technology acquisition, and licensing opportunities.

———

## Experience

IONpath Inc.

Senior Vice President, Marketing and Corporate Strategy

April 2020 - Present (5 months)
Menlo Park, California, United States

Magnolia Medical Technologies
Vice President of Marketing
September 2017 - April 2020 (2 years 8 months)
San Mateo, CA

• Management of all marketing activities including branding, digital marketing, PR and events delivering annual lead increases of over 100% each year.
• Guided all product management and portfolio strategy including customer needs assessment, business case analysis and feature prioritization.
• Strategic and tactical development of messaging and highly differentiated brand assets targeting a diverse audience in a matrix selling process.

Labcyte
7 years 7 months

Senior Director, Corporate Development & Strategy
July 2014 - September 2017 (3 years 3 months)
San Francisco Bay Area

• Reported directly to the CEO and the outward voice for Labcyte. Owned all board level interactions, communicating market opportunities and building consensus on corporate direction to maximize growth.

• Negotiated and closed multiple biopharma and industry partnership deals resulting in fully funded development of product lines forecasted to generate $100M in revenue with 100% IP ownership.

Senior Director, Marketing & Applications
March 2010 - July 2014 (4 years 5 months)

• Transformed Labcyte from a technology focused to an application solution organization resulting in the development of new global markets, partnerships and collaborations that delivered sustained >25% annual revenue growth for seven years and shareholder value creation via acquisition by Danaher.

• Managed all hardware and software product portfolio activities including customer needs assessment, business case analysis, product development and launch expanding addressable markets in genomics, drug discovery, proteomics and mass spectrometry.

Agilent Technologies, Inc.
Director of Marketing

December 2008 - March 2010 (1 year 4 months)

•Managed the strategic and tactical marketing for the organizations largest product portfolio of robotic life science instrumentation resulting in an average of 40% annual growth and company record profit margins.

•Responsible for all stages of the product life cycle including the translation of market needs into product specifications, product launch, supporting a global sales and distribution team, and marketing communication activities.

•Managed all market communication, implementing awareness and lead generation plans that provided clear brand differentiation and provided pipeline growth in excess of 50% annually.

Velocity11
5 years 4 months

Director of Marketing
September 2007 - December 2008 (1 year 4 months)

•Key contributor in organizational strategic planning, developing 5 year roadmaps that resulted in industry leading growth and drove the decision making process of the acquisition by Agilent Technologies.

•Guided the development, refinement and continual reinforcement of the Velocity11 brand which grew to be one of the most recognized in life science automation, including recognition from both Inc 500 and Deloitte Fast 50 as one of the fastest growing companies in North America.

Senior Product Manager
September 2003 - September 2007 (4 years 1 month)

•Led all product management activities for automated laboratory instrumentation, delivering a highly differentiated product portfolio, a loyal customer following, and over 40% annual revenue growth.

•Developed and implemented an agile new product development process resulting in reduced time to market for both hardware and software releases and improved portfolio awareness throughout the organization without slowing innovation.

Vividence
Web Producer
2000 - 2001 (1 year)

• SaaS provider of customer experience management tools and services to drive informed software and web interface design decisions.

•Project management lead for the Vividence portal, the delivery mechanism for detailed marketing intelligence analytics.

Stryker Endoscopy
Mechanical Engineer
1998 - 2000 (2 years)

•Led new product development for knee and shoulder arthroscopy and ear, nose and throat surgery resulting in 25% annual growth for both product lines totaling over $50M.
•Designed powered surgical cutting tools for minimally invasive surgery, interfacing regularly with leading surgeons throughput the US and Europe.

―――――

## Education

Purdue University
BS, Mechanical Engineering · (1993 - 1997)