IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAGNOLIA MEDICAL
TECHNOLOGIES, INC.,

           Plaintiff,

    v.

KURIN, INC.,

           Defendant.

)
)
)
)
)
)
)
)
)
)

C.A. No. 19-97 (CFC) (CJB)

**<u>FINAL JURY INSTRUCTIONS (PHASE 2)</u>**

# TABLE OF CONTENTS

PAGE

1.   INTRODUCTION ....................................................................................... 3

2.   ISSUES PRESENTED IN PHASE II ...................................................... 4

3.   BURDENS OF PROOF ............................................................................. 5

4.   PATENT INVALIDITY ............................................................................ 7

  4.1.   LEVEL OF ORDINARY SKILL ........................................................ 8

  4.2.   PRIOR ART .......................................................................................... 9

  4.3.   ANTICIPATION ................................................................................. 10

  4.4.   OBVIOUSNESS .................................................................................. 11

  4.5.   WRITTEN DESCRIPTION REQUIREMENT ............................... 14

5.   PATENT DAMAGES .............................................................................. 16

  5.1.   DAMAGES GENERALLY ................................................................. 16

  5.2.   LOST PROFITS .................................................................................. 18

  5.3.   REASONABLE ROYALTY ............................................................... 20

    5.3.1. Relevant Factors ............................................................................ 21

6.   DELIBERATION .................................................................................... 24

## 1. INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I have given you instructions at the beginning of each phase and before you began deliberations for Phase 1. I will not repeat those instructions now.

Instead, I will only explain the positions of the parties and the law you will apply in this phase. Please listen very carefully to everything I say.

You will have a written copy of the instructions I have given you previously and of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 2. ISSUES PRESENTED IN PHASE II

You must decide the following issues:

1)    Whether Kurin has proven by clear and convincing evidence
that any of the asserted claims are invalid; and

2)    If any asserted patent claim is not invalid, whether Magnolia
has proven by a preponderance of the evidence the amount of
money damages, if any, that is adequate to compensate
Magnolia for Kurin's infringement.

## 3. BURDENS OF PROOF

For each issue in this phase, either Magnolia or Kurin bears the burden of proof. The party who bears the burden of proof on an issue bears the burden of persuading you to find in their favor. In this phase of the case, there are two burdens of proof. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

You already found that Kurin infringed the #483 patent.

Kurin contends that the asserted claims of the #483 patent are invalid. It must prove its case by clear and convincing evidence. Clear and convincing evidence means that it is highly probable that a fact is true. Proof by clear and convincing evidence is a higher burden than proof by a preponderance of the evidence.

Magnolia contends that Kurin must pay money damages to compensate for that infringement. Magnolia must prove its case by what is called the preponderance of the evidence. That is the same burden of proof that you applied in the first phase of the trial. As a reminder, that means that Magnolia must prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Magnolia and the evidence favorable to Kurin on opposite sides of the scales, Magnolia would have to make the scales tip slightly in its favor.

As a reminder, "proof beyond a reasonable doubt" does not apply in civil cases such as this.  So you should put it out of your mind.

**4. PATENT INVALIDITY**

I will now instruct you on the rules you must follow when you decide whether or not Kurin has proven that any of the asserted claims are invalid. To prove that any claim of a patent is invalid, Kurin must persuade you by clear and convincing evidence; that is, you must be left with a clear conviction that the claim is invalid.

Before you began your deliberations in Phase 1, I explained the role of the claims in a patent. At that time, I told you that infringement must be assessed on a claim-by-claim basis. That is also true for invalidity. There may be infringement as to one claim, but not as to another. Similarly, one claim may be invalid, but another claim may not be invalid.

## 4.1.   LEVEL OF ORDINARY SKILL

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the invention at the time the invention was made.  Assume that the person of ordinary skill knows all prior art listed and defined below at Instruction 4.2.  And assume that the person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems in this field.

The parties agree, here, that a person of ordinary skill in the art would have a Bachelor's degree in bioengineering or mechanical engineering and several years of experience in bioengineering and medical device design, and/or have a medical degree coupled with experience in mechanical engineering and design.  A person of skill would also have a working knowledge of fluid flow, particularly in small diameter channels and tubing.

## 4.2.   PRIOR ART

Under the patent laws, a person is entitled to—and may properly be granted—a patent only if the invention claimed in the patent is new, useful, and not obvious in light of what came before the date of the invention (also known as the priority date). That which came before is referred to as the prior art. Prior art includes publications, such as published articles, patents, or patent applications, from anywhere in the world that were published before the date of invention. The invalidity of a claim is assessed based on the priority date.

Here for purposes of prior art, the parties agree that the priority date for the #483 Patent was no later than October 12, 2012.

Kurin relies on the following prior art to the #483 Patent:

- United States Patent Application Publication No. 2005/0161112 to Ehwald et al. ("Ehwald")
- "A Method for the Reliable Determination of Clotting Time in Whole Blood" by G.A. Mayer, M.D. ("Mayer")
- United States Patent No. 4,673,386 to Gordon ("Gordon")

### 4.3.   ANTICIPATION

In order for someone to be entitled to a patent, the invention must actually be "new." Kurin contends that the asserted claims of the #483 Patent are "anticipated," which means they were not new.

Specifically, Kurin contends that the Mayer reference anticipates claims 1 and 24 of the #483 Patent.

Invalidity by anticipation means that a single piece of prior art discloses each and every element (or limitation) of the claimed invention such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention. To anticipate the invention (i.e., the patent claim), the prior art does not have to use the same words as the claim. But the single piece of prior art must disclose all of the elements of the claim, and the elements must be arranged in the same way as in the claim. The claim elements may either be disclosed expressly or necessarily implied (that is, definitely present, even if not explicitly stated). If the prior art discloses—whether expressly or inherently—a device that would practice the claim, the claim is anticipated.

### 4.4.   OBVIOUSNESS

Kurin contends that the claims of the #483 Patent would have been obvious based on the following combinations of prior art:

- Mayer
- Gordon in view of Ehwald

Even though an invention may not have been identically disclosed or described in the prior art before it was made by an inventor, in order to be patentable, the invention must have not been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Kurin must show that a claim is invalid for being obvious by clear and convincing evidence. The issue is not whether the claimed invention would have been obvious to you as a layperson, to me as the judge, or to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time the invention was made.

You should not consider what is known today or use what is taught in the patent as a road map for selecting and combining items of prior art. Do not use hindsight; instead, put yourself in the place of a person of ordinary skill in the art as of the date of invention. Assume the date of invention is before the patent was issued (and before it could have been relied upon).

In determining whether an asserted claim would have been obvious, you must consider:

(1)     the scope and content of the prior art and whether the prior art that Kurin identified is related or relevant to the particular problems the inventor(s) of the claimed inventions faced;

(2)     the level of ordinary skill in the field of the invention that someone would have had at the time the patent was filed;

(3)     any differences between the prior art and the claimed invention; and,

(4)     additional "objective indicia" of non-obviousness that I will explain shortly.

In considering whether a claimed invention is obvious, you may (but are not required to) find obviousness if you find that, at the time of the claimed invention, a reason existed that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the same way the claimed invention does.

You should also consider whether a person of ordinary skill would have had a reasonable expectation of success in making or carrying out the invention through combining or modifying the prior art building blocks without the benefit of the #483

Patent and its disclosure.  Importantly, a claim is not proved obvious merely by demonstrating that each of the claim's elements or requirements was independently known in the prior art.  Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries will likely be—almost of necessity—combinations of what is already known.

You should also consider what are called "objective indicia" that may show whether or not the claimed invention is obvious.  These indicia include:

1)   Whether products covered by the claim(s) were commercially successful as a result of an inventive aspect of the claim (rather than success due to unclaimed features, design needs, market-pressure, advertising, or similar activities);

2)   Whether the claimed invention satisfied a long-felt need;

3)   Whether others had tried and failed to make the claimed invention; and

4)   Whether others in the field praised the claimed invention.

When considering these factors there must be a connection between the objective evidence of non-obviousness and an inventive aspect of the claim.  You should consider each claim separately.

## 4.5.   WRITTEN DESCRIPTION REQUIREMENT

A patent must contain a written description of the invention claimed in the patent to ensure that the patent owner actually invented the claimed invention. To satisfy the written-description requirement, the patent specification must describe each and every limitation of a patent claim, in sufficient detail, to show that the inventors actually possessed the claimed invention at the time that the patent application was filed. The issue of written description is decided for each claim, individually.

Kurin contends that the asserted claims of the #483 Patent are invalid because they fail to satisfy the written-description requirement.

The written-description requirement is satisfied if a person of ordinary skill in the field of the invention would have recognized, from reading the patent specification, that the inventor possessed the full scope of the claimed invention when considering the claim as a whole. It is unnecessary to spell out every detail of the invention, use the exact words found in the claim, or provide specific examples. But a mere wish or plan for obtaining the claimed invention is not adequate written description.

In evaluating whether the specification has provided an adequate written description, you may consider factors such as

(1)     the nature and scope of the patent claims;

(2)     the complexity, predictability, and maturity of the technology at issue;

(3)     the existing knowledge in the relevant field; and

(4)     the scope and content of the prior art.

## 5. PATENT DAMAGES

### 5.1.   DAMAGES GENERALLY

If you find that any infringed claim is not invalid, you must then consider what amount of damages to award to Magnolia.  If you find that both claims 1 and 24 are invalid, then you need not address damages in your deliberations.  By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate Magnolia for the infringement.  They are not meant to punish an infringer.  Your damages award, if you reach this issue, should put Magnolia in approximately the same financial position that it would have been without the infringement.

Magnolia has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Magnolia establishes that it more likely than not suffered.  While Magnolia is not required to prove the amount of its damages with mathematical precision, Magnolia must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Magnolia seeks lost profits and a reasonable royalty.  Kurin contends Magnolia cannot prove lost profits and would only be entitled to a

reasonable royalty.  But, regardless of the type of damages you choose to award, you must be careful to ensure the award is no more and no less than the value of the patented invention.

## 5.2.   LOST PROFITS

To recover lost profits, Magnolia must prove by a preponderance of the evidence that there is a reasonable probability that, but for Kurin's infringement, Magnolia would have earned higher profits.  In other words, to recover lost profits, Magnolia must prove that, had there been no infringement by Kurin, Magnolia would have made some portion of the sales that Kurin made of the infringing Kurin Lock or it would have sold its Steripath product at higher prices.

To meet its burden of proof, Magnolia must establish one of the following: (1) that there were no available, acceptable, noninfringing substitute products other than the Kurin Lock; or, (2) if there were such other products, the market share of Kurin's sales that Magnolia would have captured.

To meet its burden, Magnolia must also establish by a preponderance of the evidence the amount of profit that Magnolia would have made if Kurin had not infringed.

Magnolia can recover additional damages if it can establish that it is more likely than not that, if there had been no infringement, Magnolia would have been able to charge higher prices for some of its products.  If this fact is established, you may award as additional damages the difference between:

(1)    the amount of profits Magnolia would have made by selling its product at the higher price, and

(2)    the amount of profits Magnolia actually made by selling its product at the lower price Magnolia actually charged for its product.

### 5.3. REASONABLE ROYALTY

If you find that either claim 1 or 24 is not invalid, Magnolia is entitled to at least a reasonable royalty to compensate it for that infringement.

If you find that Magnolia has not proved its claim for lost profits or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Magnolia a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to the infringement, i.e. August 7, 2018.

In considering this hypothetical negotiation, you should focus on what the expectations of Magnolia and Kurin would have been if they entered into an agreement at that time at that time. In determining this, you must assume that both parties believed the patent was valid and infringed, and the patent holder and infringer were willing to enter into an agreement.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

### 5.3.1. Relevant Factors

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  You are trying to determine the amount that the parties to the hypothetical negotiation would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

In determining the reasonable royalty, you may consider the following nonexclusive list of factors:

1)      The royalties received by Magnolia for any licensing of the '483 Patent, proving or tending to prove an established royalty;

2)      The rates paid by Kurin for any use of other patents comparable to the '483 Patent;

3)      The nature and scope of the license, such as whether the license is exclusive or non-exclusive or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4)      Any established policy by Magnolia to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5)      The commercial relationship between Magnolia and Kurin, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;

6)      The effect of selling the patented specialty in promoting sales of other Kurin products; the existing value of the invention to Magnolia as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales;

7)      The duration of the patent and the term of the license;

8)      The established profitability of the product made under the patent, its commercial success, and its current popularity;

9)      The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10)     The nature of the patented invention; the character of any commercial embodiment of it as owned and produced by Magnolia, and the benefits to those who have used the invention;

11)     The extent to which Kurin has made use of the invention, and any evidence probative of the value of that use;

13)     The portion of the profit or the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

12)     The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, or business risks, or significant features or improvements added by Kurin;

14)     The opinion testimony of qualified experts; and

15)     The amount that a licensor (such as Magnolia) and a licensee (such as Kurin) would have agreed upon (at the time any alleged infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case as well as any other factors which would have increased or decreased the royalty Kurin would have been willing to pay and Magnolia would have been willing to accept, acting as normally prudent business people.

## 6. DELIBERATION

I have completed my instructions on the law.  All the instructions I gave you previously about the rules for deliberations still apply, and you will have a copy of them with you.

I will remind you that, when you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole, including the instructions I gave you previously.  You should not single out any part of any instruction, including this one, and ignore others.  They are all equally important.

Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourself based on the evidence presented.

You may now retire and continue your deliberations.