IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGNOLIA MEDICAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 19-97 (CFC)(CJB) |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| KURIN, INC., | ) | Confidential Version Filed: September 9, 2022 |
| | ) | Public Version Filed: September 16, 2022 |
| Defendant. | ) | |

**MAGNOLIA'S OPENING BRIEF IN SUPPORT OF ITS MOTION
FOR AN ACCOUNTING OF KURIN'S SALES,
SUPPLEMENTAL DAMAGES, AND INTEREST**

OF COUNSEL:

Ashok Ramani
David J. Lisson
Micah G. Block
Philip T. Sheng
Ian Hogg
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000

Kathryn B. Bi
Alena Farber
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

September 9, 2022

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

# TABLE OF CONTENTS

PAGE

I.  INTRODUCTION ........................................................................1

II.  NATURE AND STAGE OF PROCEEDINGS................................2

III.  STATEMENT OF FACTS ..........................................................2

IV.  ARGUMENT..............................................................................6

    A.  An accounting and supplemental damages should be awarded on Kurin's sales from August 1, 2020 through entry of judgment ............6

        1.  Supplemental damages should be awarded on all infringing sales not accounted for in the jury's verdict .............6

        2.  Magnolia has not waived its right to supplemental damages ........................................................................9

    B.  Pre-judgment interest should be awarded ...........................14

    C.  Post-judgment interest should be awarded..........................15

V.  CONCLUSION............................................................................16

# TABLE OF AUTHORITIES

PAGE

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  No. 2:10-cv-248, 2011 WL 4899922 (E.D. Va. Oct. 14, 2011)......................8, 15

*Agrofresh Inc. v. Essentiv LLC*,
  C.A. No. 16-662 (MN), 2020 WL 7024867 (D. Del. Nov. 30, 2020) ................14

*Amgen Inc. v. Hospira, Inc.*,
  336 F. Supp. 3d 333 (D. Del. 2018) ...................................................................15

*E.I. du Pont de Nemours & Co. v. Unifrax I LLC*,
  C.A. No. 14-1250-RGA, 2017 WL 4004419 (D. Del. Sept. 12, 2017) ...........7, 15

*Eaves v. County of Cape May*,
  239 F.3d 527 (3d Cir. 2001) ...............................................................................16

*Energy Transp. Grp., Inc. v. William Demant Holding*,
  697 F.3d 1342 (Fed. Cir. 2012) ..........................................................................14

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .......................................................................7, 10

*Gen. Motors Corp. v. Devex Corp.*,
  461 U.S. 648 (1983) ............................................................................................14

*Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*,
  C.A. No. 15-634-JFB, 2019 WL 1877189 (D. Del. Apr. 26, 2019) .....................7

*IMX, Inc. v. Lending Tree, LLC*,
  469 F. Supp. 2d 203 (D. Del. 2007) ...................................................................15

*Ironworks Patents, LLC v. Apple, Inc.*,
  255 F. Supp. 3d 513 (D. Del. 2017) ...................................................................15

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*,
  833 F. Supp. 2d 333 (E.D.N.Y. 2011)........................................................ 8, 9, 11

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
  No. CV-S-97-1383-EJW, 2001 WL 34778689 (D. Nev. Aug. 1, 2001)..........9, 11

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999) ............................................................12

*PCT Int'l Inc. v. Holland Elec. LLC*,
    No. 12-1797-PHX-JAT, 2015 WL 5210628 (D. Ariz. Sept. 8, 2015) .............7, 11

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013) ............................................................10

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996) ........................................................8, 14

*Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*,
    289 U.S. 689 (1933) ........................................................................13

*Spectralytics, Inc. v. Cordis Corp.*,
    650 F. Supp. 2d 900 (D. Minn. 2009) ...................................................13

*Sun Ship, Inc. v. Matson Navigation Co.*,
    785 F.2d 59 (3d Cir. 1986) ................................................................16

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*,
    C.A. No. 17-1390-RGA, 2022 WL 3973499 (D. Del. Aug. 31, 2022). 7, 8, 11, 15

*TiVo Inc. v. EchoStar Commc'ns Corp.*,
    No. 2:04-CV-1-DF, 2006 WL 8440209 (E.D. Tex. Aug. 17, 2006) ...............9, 10

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991) ...........................................................15

*Whitserve, LLC v. Computer Packages, Inc.*,
    694 F.3d 10 (Fed. Cir. 2012) ................................................................7

**Statutes**

28 U.S.C. § 1961(a) ...............................................................................15

28 U.S.C. § 1961(b) ...............................................................................16

35 U.S.C. § 284 ................................................................................6, 14

## I.      INTRODUCTION

In addition to finding that Kurin infringed Magnolia's '483 Patent and rejecting Kurin's validity challenges, the jury found a reasonable royalty for Kurin's infringement of $2.66 per unit and that damages through July 31, 2020 totaled $2,144,093.[1]   Kurin's infringement did not stop on July 31, 2020, so Magnolia should receive damages for *all* of Kurin's infringing sales.  Accordingly, Magnolia seeks to recover its damages from August 1, 2020 through the entry of judgment.

Notwithstanding repeated requests from Magnolia, Kurin has refused to provide post-July 31, 2020 sales data.  Accordingly, both parties presented damages calculations up through July 31, 2020 only, and the jury expressly limited its damages award to the period up to that date.  But Magnolia must be compensated for all of Kurin's infringement, and Kurin sold millions of its infringing Kurin Lock products after July 31, 2020, none of which are accounted for in the jury's verdict.  Thus, Kurin should be required to provide the number of unaccounted-for units and pay supplemental damages on those units at the jury's royalty rate of $2.66 per unit for the period between August 1, 2020 and the entry of judgment.

---

[1]      This brief uses the following abbreviations throughout: (1) "'483 Patent" means U.S. Patent No. 10,039,483; and (2) "Ex." refers to exhibits to the declaration of Ian Hogg filed in support of this motion.

Magnolia further requests that the Court award pre- and post-judgment interest on all damages owed by Kurin, including any supplemental damages awarded by the Court.

## II.    NATURE AND STAGE OF PROCEEDINGS

The Court held a phased jury trial in this case starting on July 25, 2022.  On July 26, 2022, the jury found that the Kurin Lock literally infringes claims 1 and 24 of the '483 Patent.  D.I. 437.  On July 28, 2022, the jury found claims 1 and 24 not invalid, assessed a reasonable royalty rate of $2.66 per unit, and awarded Magnolia $2,144,093 in reasonable royalty damages for infringing units sold by Kurin from March 7, 2019 through July 31, 2020.  D.I. 443.

## III.   STATEMENT OF FACTS

During discovery, Kurin produced sales and financial data through July 31, 2020.  Ex. 1 (Dean Rep.) ¶ 42; Ex. 9 (July 27 Tr.) 130:19–21 (Dean).  Magnolia's damages expert, Ms. Elizabeth Dean, submitted her report in January 2021, and Kurin's damages expert, Dr. Patrick Kennedy, submitted his report in February 2021.  Ex. 1 (Dean Rep.); Ex. 2 (Kennedy Rep.).  Ms. Dean addressed lost profits, price erosion, and reasonable royalty damages.  Ex. 1 (Dean Rep.) ¶¶ 39–41, Table 2.  Dr. Kennedy disagreed that Magnolia was entitled to lost profits and price erosion damages, and provided an alternative reasonable royalty rate.  Ex. 2 (Kennedy Rep.) ¶¶ 85, 120–21, 137.  Dr. Kennedy agreed, however,

with Ms. Dean's framework for analyzing reasonable royalty damages.  Both experts employed a hypothetical negotiation, informed by the *Georgia-Pacific* factors, to determine their proposed royalty rates.  Ex. 1 (Dean Rep.) ¶ 41; Ex. 2 (Kennedy Rep.) ¶¶ 46, 154.  They agreed that the hypothetical negotiation would take place in 2018 and that the parties would agree to a per-unit running royalty.  Ex. 1 (Dean Rep.) ¶ 41; Ex. 2 (Kennedy Rep.) ¶¶ 46, 175.  They also both limited their calculations of the royalty base to units sold up to July 31, 2020, the last day for which Kurin had produced sales information.  Ex. 1 (Dean Rep.) ¶¶ 42, 208–09; Ex. 2 (Kennedy Rep.) ¶¶ 140, 155, Fig. 30.

On February 10, 2022, the Court set trial for July 25, 2022.  D.I. 405 at 145:4–12.  Shortly thereafter, Magnolia requested that Kurin provide updated sales and financial data so that Ms. Dean could bring her damages calculations up to date. Ex. 3 (March 25, 2022 Email from I. Hogg) at 4–5.  Specifically, Magnolia asked Kurin to provide its audited financial statements for 2020 and 2021 and supplement four previously produced spreadsheets with data through March 31, 2022.  *Id.*  Rather than producing the readily available information, Kurin demanded to re-open damages discovery entirely, seeking from Magnolia all documents concerning numerous broad subject matters such as "all new developments regarding the market" and "all new improvements or changes implemented to Magnolia's products/services and the reasons for these changes,"

in addition to updated financial data and a supplemental deposition of Ms. Dean. Ex. 3 (April 8, 2022 Email from C. Nyarady) at 2–3.  In response, Magnolia explained that its request for supplemental data was not an invitation to re-do discovery and proposed a simple mutual supplementation of the requested financial and sales data, consistent with standard practice.  Ex. 3 (April 25, 2022 Email from I. Hogg) at 1–2.  Magnolia stated that if Kurin did not agree to produce the requested information, Magnolia would proceed to trial with the data it had.  *Id.* Kurin declined to produce any supplemental information.  Ex. 3 (April 29, 2022 Email to from C. Nyarady) at 1.  Kurin never suggested that Magnolia "waived" its right to compensation for post July 31, 2020 infringement by proceeding to trial, nor could it have given the course of events.  *Id.*  And Magnolia certainly did not agree that it was limiting its damages claim to the period up to the close of fact discovery.

Before the damages phase of the trial began, Magnolia renewed its request for updated sales figures covering Kurin's sales made since July 31, 2020, first with Kurin's counsel and then with the Court.  Ex. 8 (July 26 Tr.) 228:2–10, 231:21–232:14, 328:19–24 (Colloquy).  Kurin again refused to produce updated sales figures.  *Id*. at 231:3–16 (Colloquy).  The Court and the parties thus agreed to amend the verdict form to identify the reasonable royalty rate determined by the jury and the Court noted that, if the jury awarded royalty damages, the Court could

4

apply the jury-determined rate to all subsequent Kurin sales made from August 1, 2020 onwards.  *Id*. at 328:2–339:18 (Colloquy).

        The next day, Ms. Dean testified to her opinions on lost profits, price erosion and reasonable royalty.  As to reasonable royalty, she opined that the parties would have agreed to a $5.75 per unit royalty rate in a hypothetical negotiation and, in the absence of complete sales information, calculated $4,634,788 in reasonable royalty damages on the 806,050 units Kurin sold from March 7, 2019 through July 31, 2020, if the jury found no lost profits.  Ex. 9 (July 27 Tr.) 130:15–25, 143:11–147:24, 148:23–149:4 (Dean).  For his part, Dr. Kennedy critiqued Ms. Dean's rate, opined that the parties would have agreed to a different per unit rate in the hypothetical negotiation, and applied that rate to the 806,650 infringing units Kurin sold between March 7, 2019 and July 31, 2020. Ex. 10 (July 28 Tr.) 78:17–83:4, 110:20–111:1 (Kennedy).

        During the trial, Kurin's CEO confirmed that Kurin's infringing sales did not stop on July 31, 2020, and he testified that Kurin projected to sell approximately 1.7 million units in 2022 alone and that it had sold approximately 3.6 million infringing units from inception through trial.  Ex. 9 (July 27 Tr.) 206:19–22, 234:5–19 (Rogers).  Prior to closing arguments, Magnolia indicated it was amenable to asking the jury to do the math and carry whatever rate they found forward to include post-July 31, 2020 sales.  Ex. 10 (July 28 Tr.) 7:5–8:12

(Colloquy).   Kurin did not accept this approach; instead, the parties agreed to a verdict form that asked the jury to find both the total royalty for the period up to July 31, 2020, and the royalty rate for all per-unit sales.   *Id*.   The jury then found that Magnolia proved a reasonable royalty rate of $2.66 per unit, and applied that rate to the 806,050 units to award Magnolia $2,144,093 in reasonable royalty damages through July 31, 2020.   D.I. 443.

Following trial, Magnolia again requested updated sales data from Kurin in the form of an updated version of Kurin's QuickBooks sales data, admitted at trial as PTX-661.   Ex. 4 (Aug. 18, 2022 Letter to N. Groombridge).   Kurin did not dispute that this information is maintained in the ordinary course of business and readily available, yet once again Kurin refused to provide it.   Ex. 5 (Aug. 30, 2022 Letter to I. Hogg).   Kurin also argued that Magnolia had "waived" its right to seek supplemental damages.   *Id.*

## IV.   ARGUMENT

### A.   An accounting and supplemental damages should be awarded on Kurin's sales from August 1, 2020 through entry of judgment

#### 1.   Supplemental damages should be awarded on all infringing sales not accounted for in the jury's verdict

"Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."   35 U.S.C. § 284.   "When the damages are

not found by a jury, the court shall assess them." *Id.* Barring exceptional circumstances, courts should award supplemental damages for all infringing sales not accounted for in the jury's verdict in order to fully compensate the plaintiff for the defendant's infringement. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010); *see also Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012). "Typically, supplemental damages are calculated based on the jury's damages verdict." *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, C.A. No. 17-1390-RGA, 2022 WL 3973499, at *3 (D. Del. Aug. 31, 2022) (quoting *E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, C.A. No. 14-1250-RGA, 2017 WL 4004419, at *7 (D. Del. Sept. 12, 2017).

Courts routinely award an accounting of, and supplemental damages on, sales not accounted for in the jury's verdict, especially where such sales occurred after the fact discovery cutoff. *See, e.g., Godo Kaisha IP Bridge 1 v. TCL Commc'n Tech. Holdings Ltd.*, C.A. No. 15-634-JFB, 2019 WL 1877189, at *4–5 (D. Del. Apr. 26, 2019) ("[P]atentees are entitled to supplemental damages accounting for any infringing sales that occurred before the verdict but that were not reflected in the last financial discovery produced."); *PCT Int'l Inc. v. Holland Elec. LLC*, No. 12-1797-PHX-JAT, 2015 WL 5210628, at *17–19 (D. Ariz. Sept. 8, 2015) (ordering accounting and supplemental damages for pre-verdict

sales made after the close of fact discovery); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-cv-248, 2011 WL 4899922, at \*3–5 (E.D. Va. Oct. 14, 2011) (same); *Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333, 347 (E.D.N.Y. 2011) (collecting cases).   Indeed, Judge Andrews very recently awarded a patentee almost two years' worth of supplemental damages at the jury's reasonable royalty rate to account for sales not reflected in the jury's verdict. *See Sunoco Partners*, 2022 WL 3973499, at \*3–4.

Here, the jury's damages award of $2,144,093 expressly covered Kurin's infringing sales of 806,050 units through July 31, 2020 only.  D.I. 443. But Kurin's infringement did not stop on that date; Kurin sold millions more infringing units between then and trial.  Ex. 9 (July 27 Tr.) 206:19–22, 234:5–19 (Rogers).  Kurin's CEO testified that Kurin had sold approximately 3.6 million total units at the time of his testimony. *Id*.  Removing the units Kurin sold through July 31, 2020 leaves an approximate total of 2,633,796 infringing units sold through trial that are not accounted for in the jury's damages award.  At the $2.66 per unit royalty rate awarded by the jury, this evidence establishes that Magnolia deserves at least $7,005,897.36 in supplemental damages through the time of trial. *See Sensonics, Inc. v. Aerosonic Corp*., 81 F.3d 1566, 1572 (Fed. Cir. 1996) ("[I]f actual damages can not be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best

available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer."). And Kurin has continued to willfully sell infringing units since the trial while indicating that it will continue to do so until prohibited by the Court. Ex. 6 (Kurin Press Release).

An accounting of the units not captured in the jury's verdict through judgment along with an award of supplemental damages at the jury's rate of $2.66 on all such sales is thus necessary to fully compensate Magnolia. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. CV-S-97-1383-EJW, 2001 WL 34778689, at *22 (D. Nev. Aug. 1, 2001) ("To deny the Motion for an Accounting would be to allow [defendant] to evade its obligation to pay damages for the remainder of the period of infringement and would contradict the patent law's purpose of compensating patent holders for the damage suffered due to infringement."); *Metso Minerals*, 833 F. Supp. 2d at 351. "[D]enial of such damages would result in a windfall to [Kurin]." *TiVo Inc. v. EchoStar Commc'ns Corp.*, No. 2:04-CV-1-DF, 2006 WL 8440209, at *3 (E.D. Tex. Aug. 17, 2006).

### 2.    Magnolia has not waived its right to supplemental damages

During and after trial, Kurin has asserted that Magnolia has somehow "waived" its right to an accounting and supplemental damages. Ex. 8 (July 26 Tr.) 333:18–21, 336:2–11 (Colloquy); Ex. 5 (Aug. 30, 2022 Letter to I. Hogg). Magnolia has not.

Throughout this litigation, Magnolia has made clear its intention to seek full compensation for *all* of Kurin's infringing sales.   In its operative Complaint, Magnolia requested not only "all appropriate damages for the infringement that has occurred, and any continuing or future infringement of the Asserted Patents, up until the date such judgment is entered," but also "an accounting adequate to compensate Magnolia for Kurin's infringement."   D.I. 5 at 38.  Then again, in the pretrial order, Magnolia noted that it "intends to show the amount of compensatory damages to which it is entitled for Kurin's infringement," and that "it is entitled to an accounting."   D.I. 411, Ex. 12 ¶¶ 19, 23.  That was more than sufficient to preserve Magnolia's right to supplemental damages, as the Federal Circuit has repeatedly held.   *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1380–81 (Fed. Cir. 2013); *Finjan*, 626 F.3d at 1213; *see also TiVo Inc.*, 2006 WL 8440209, at *2 ("Failure to include a separate request for 'supplemental' damages does not result in waiver because such damages are a component of any request for compensatory damages.").

Kurin's position seems to be that, notwithstanding Magnolia's express damages claims, *Kurin's* refusal to provide post-July 2020 sales information has resulted in *Magnolia's* waiver of its right to damages on such sales.  That is, of course, nonsensical.  A patentee cannot be denied damages for over two years' worth of sales by virtue of an infringer's own decision not to produce its sales data

for that period.   Otherwise, the infringer could always defeat supplemental damages simply by refusing to produce information that it otherwise keeps in the ordinary course of business.

The parties' pre-trial correspondence nowhere mentions waiver or evidences any intent by Magnolia to limit its damages claim to the period up to July 31, 2020.  *See* Ex. 3 (April 29, 2022 Email from C. Nyarady) at 1.  To the contrary, Magnolia specifically requested that Kurin produce updated sales information so that Ms. Dean could update her calculations.  Ex. 3 (March 25, 2022 Email from I. Hogg) at 4.  Kurin refused to do so unless Magnolia agreed to re-opening and re-doing large portions of fact and expert discovery a mere three months before trial.  *See* Ex. 3 (April 29, 2022 Email from C. Nyarady) at 1.  That Magnolia did not so agree and chose instead to proceed to trial on the data it had should not be surprising.  It certainly does not constitute waiver.  Indeed, courts have awarded supplemental damages—and rejected claims of waiver—where a patentee has not even asked for supplemental discovery, let alone asked and been refused.  *See, e.g.*, *Metso Minerals*, 833 F. Supp. 2d at 348–51 (rejecting waiver argument and awarding supplemental accounting and damages despite plaintiff failing to request supplemental discovery and failing to raise the issue in its complaint or pretrial order); *see also PCT Int'l*, 2015 WL 5210628, at *17–18; *Mikohn Gaming*, 2001 WL 34778689, at *19; *cf. Sunoco Partners*, 2022 WL

3973499, at *3–4 (plaintiff's failure to ask defendants to stipulate to authenticity of post-discovery volume data did not preclude supplemental damages).

Any suggestion by Kurin that the "book of wisdom" requires the broad additional discovery that it demanded as a prerequisite to supplemental damages would be similarly misplaced.  *Cf.* Ex. 8 (July 26 Tr.) 226:15–228:10, 233:7–11, 234:18–235:2.  The "book of wisdom" simply stands for the proposition that courts may, but are not required to, consider certain information subsequent to the date of first infringement when conducting a hypothetical negotiation analysis. *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1276–77 (Fed. Cir. 1999) ("And while *Rite-Hite* does not require the exclusion of post-infringement evidence, it certainly does not require its entry.").  It does not support, let alone require, reopening discovery to conduct a new hypothetical negotiation to replace the jury's damages award.  In this case, it was undisputed that the hypothetical negotiation would have occurred at or about the time the patent issued, and the parties presented extensive evidence relating to that hypothetical negotiation at trial with no suggestion that any developments after the close of fact discovery would change the appropriate royalty rate.  Ex. 9 (July 27 Tr.) 143:1–147:24 (Dean); Ex. 10 (July 28 Tr.) 72:24–74:5, 77:19–81:17 (Kennedy).  The jury considered that testimony and determined that the parties would have agreed to a

running royalty of $2.66 per unit—a figure proposed by neither party's expert. D.I. 443.

Magnolia is not aware of any case in which the "book of wisdom" was invoked as a defense against damages as Kurin now suggests. *See Spectralytics, Inc. v. Cordis Corp.*, 650 F. Supp. 2d 900, 913 (D. Minn. 2009) (discussing *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 697–99 (1933)) (the purpose of the "book of wisdom" is to "avoid undercompensating patentees, not to limit their compensation"), *vacated in part on other grounds*, 649 F.3d 1336 (Fed. Cir. 2011).   Indeed, Kurin's approach would raise serious questions under the Reexamination Clause of the Seventh Amendment and cannot be reconciled with the verdict form in this case, to which both parties stipulated. Ex. 8 (July 26 Tr.) 328:2–339:18 (Colloquy).  The findings in the jury's verdict form are facts.  That Kurin may not like those findings is irrelevant, and neither that nor the "book of wisdom" provides any justification or authority for revisiting the jury's verdict.  *See* U.S. Const. amend VII ("no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law").

Ultimately, the parties' pre-trial dispute concerned the scope and timing of Kurin's request for a broad swath of irrelevant information.  Magnolia's request was and is for simple sales information that Kurin keeps in the ordinary

13

course of business and that would not be burdensome to produce.  Indeed, Kurin need only update a single spreadsheet admitted at trial with post-July 2020 sales data, and its continued refusal to do so cannot result in the forfeiture of Magnolia's right to full compensation for such sales.[2]

### B.    Pre-judgment interest should be awarded

Pursuant to 35 U.S.C. § 284, "the court shall award the claimant damages adequate to compensate for the infringement . . . ***together with interest and costs as fixed by the court***" (emphasis added).  As the Federal Circuit has made clear, "pre-judgment interest is the rule, not the exception."  *Energy Transp. Grp., Inc. v. William Demant Holding*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (internal quotations omitted); *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983) ("[P]rejudgment interest should ordinarily be awarded.").

The common practice in the District of Delaware is to use the prime rate, compounded quarterly, to calculate pre-judgment interest.  *Agrofresh Inc. v. Essentiv LLC*, C.A. No. 16-662-MN, 2020 WL 7024867, at *26 (D. Del. Nov. 30, 2020) (collecting cases); *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D.

---

[2]    While Kurin is obligated to provide current and accurate sales data so that the Court may assess supplemental damages, its refusal to do so does not defeat Magnolia's request for supplemental damages.  On the contrary, the sworn trial testimony of Kurin's CEO regarding the number of unit sales is a sufficient basis on which to award supplemental damages through the time of trial, and can be extrapolated to the time of judgment.  *See Sensonics*, 81 F.3d at 1572.

Del. 2018), *aff'd*, 944 F.3d 1327 (Fed. Cir. 2019); *Ironworks Patents, LLC v. Apple, Inc.*, 255 F. Supp. 3d 513, 533 (D. Del. 2017); *IMX, Inc. v. Lending Tree, LLC*, 469 F. Supp. 2d 203, 227–28 (D. Del. 2007).  "Courts have recognized that the prime rate best compensates a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money." *E.I. du Pont*, 2017 WL 4004419, at *8 (cleaned up).  This is true even if there is no evidence that the patentee ever borrowed at the prime rate.  *See Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991).

Accordingly, the Court should award Magnolia pre-judgment on all of the damages it is due through the date of judgment, including any supplemental damages awarded by the Court.  *See Sunoco Partners*, 2022 WL 3973499, at *5 & n.7; *ActiveVideo Networks, Inc.*, 2011 WL 4899922, at *3.

### C.  Post-judgment interest should be awarded

By statute, post-judgment interest must be awarded on Magnolia's damages.  28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").  Pursuant to 28 U.S.C. § 1961(a), "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."  "[Post-judgment] Interest

shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(b). Post-judgment interest should accrue on the entire damages award, including the jury's damages award along with any supplemental damages and pre-judgment interest awarded by the Court. *See Eaves v. County of Cape May*, 239 F.3d 527, 534 (3d Cir. 2001); *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986).

Upon entry of judgment and the Court's resolution of Magnolia's request for supplemental damages, Magnolia will submit its calculation for the appropriate per-day post-judgment interest amount due to Magnolia on the entire updated damages award through the date of Kurin's eventual payment.

## V.    CONCLUSION

For the foregoing reasons, Magnolia respectfully requests that the Court award supplemental damages on all of Kurin's post-July 2020 infringing sales not accounted for in the jury's damages award, along with both pre- and post-judgment interest.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Magnolia Medical Technologies, Inc.*

OF COUNSEL:

Ashok Ramani
David J. Lisson
Micah G. Block
Philip T. Sheng
Ian Hogg
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000

Kathryn B. Bi
Alena Farber
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

September 9, 2022

## <u>CERTIFICATION BY COUNSEL</u>

I hereby certify that the foregoing MAGNOLIA'S OPENING BRIEFIN IN SUPPORT OF ITS MOTION FOR AN ACCOUNTING OF KURIN'S SALES, SUPPLEMENTAL DAMAGES, AND INTEREST complies with the type and number limitations set forth in the November 6, 2019 Standing Order. The total number of words, including introductions and footnotes, but excluding the cover page, table of contents, table of authorities, and signature page is 3,851 according to the word processing system used to compile the brief. The text of the brief is 14-point, Times New Roman.

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 9, 2022, upon the following in the manner indicated:

Kelly E. Farnan                                              *VIA ELECTRONIC MAIL*
Nicole K. Pedi
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE  19801
*Attorneys for Defendant Kurin, Inc.*

Karen I. Boyd                                               *VIA ELECTRONIC MAIL*
Jacob S. Zweig
Jennifer Seraphine
Cyndi Claxton
TURNER BOYD LLP
702 Marshall Street, Suite 640
Redwood City, CA  94063
*Attorneys for Defendant Kurin, Inc.*

Jonathan Hangartner                                        *VIA ELECTRONIC MAIL*
X-Patents, APC
5670 La Jolla Blvd.
La Jolla, CA  92037
*Attorneys for Defendant Kurin, Inc.*

Nicholas Groombridge                                   *VIA ELECTRONIC MAIL*
Catherine Nyarady
Joshua Reich
Kripa Raman
Ariella C. Barel
Allison Penfield
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019
*Attorneys for Defendant Kurin, Inc.*

/s/ *Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)